**DeNITTIS OSEFCHEN PRINCE, P.C.**
**Stephen P. DeNittis, Esq. (031981997)**
**Joseph A. Osefchen, Esq. (024751992)**
**Shane T. Prince, Esq. (022412002)**
**525 Route 73 North, Suite 410**
**Marlton, New Jersey 08053**
**(856) 797-9951**

**HATTIS & LUKACS**
**Daniel M. Hattis, Esq.\***
**Paul Karl Lukacs, Esq.\***
**11711 SE 8th Street, Suite 120**
**Bellevue, WA 98005**
**(425) 233-8650**

**CRIDEN & LOVE, P.A.**
**Michael E. Criden, Esq.\***
**Lindsey C. Grossman, Esq.\***
**7301 SW 57th Court, Suite 515**
**South Miami, FL 33143**
**(305) 357-9000**

**\* Pro Hac Vice Application**
**   To Be Submitted**

**Attorneys for Plaintiffs and the Proposed Classes**

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY
## NEWARK VICINAGE

| | |
|---|---|
| PAMELA M. ALLEN; LISA BAKER; BRIANA BELL; KIMBERLY BLAIR;  CAROLINE BONHAM; TAMMY BURKE; SHAUNA CAVALLARO; ERIKA CONLEY; KENDRA CONOVER; DYLAN CORBIN; RYAN CORBIN; LAURA CURRY; SHAKERA DYER; RUSSELL FROM; ASHTIN GAMBLIN; ERICKA GARDNER; JAMES HENSLEY; ADAM KELLER; KRISTA KIRBY; JAN LOMBARD; AARON MAXA; LINDSEY MORAN; JENNIFER OCAMPO-NEUBAUER; ANGEL PACHECHO; LORI SNYDER; KATHRYN TAYLOR; ANTHONY VALLECORSA; and BRAD YOUNG; on behalf of themselves and all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>CELLCO PARTNERSHIP d/b/a VERIZON WIRELESS and VERIZON COMMUNICATIONS INC.,<br><br>Defendants. | CIVIL ACTION NO.<br><br>**CLASS ACTION COMPLAINT** |

Plaintiffs Pamela M. Allen, Lisa Baker, Briana Bell, Kimberly Blair, Caroline Bonham, Tammy Burke, Shauna Cavallaro, Erika Conley, Kendra Conover, Dylan Corbin, Ryan Corbin, Laura Curry, Shakera Dyer, Russell From, Ashtin Gamblin, Ericka Gardner, James Hensley, Adam Keller, Krista Kirby, Jan Lombard, Aaron Maxa, Lindsey Moran, Jennifer Ocampo-Neubauer, Angel Pachecho, Lori Snyder, Kathryn Taylor, Anthony Vallecorsa, and Brad Young, individually and on behalf of all others similarly situated, allege as follows, on personal knowledge and investigation of their counsel, against Defendants Cellco Partnership d/b/a Verizon Wireless and Verizon Communications Inc. (hereinafter collectively, "Verizon" or "Defendants"):

## I.    <u>INTRODUCTION</u>

1.    This is a proposed class action brought on behalf of current and former Verizon Wireless subscribers challenging a bait-and-switch scheme perpetrated by Defendants against Verizon Wireless customers.

2.    The basis for the class claims are set forth in greater detail herein, but arise from Verizon's sign-up policies and practices which deceive customers by prominently advertising certain flat monthly rates for Verizon post-paid wireless service plans.  After customers sign up, however, Verizon uniformly charges them higher monthly rates than it advertised and promised by padding customers' bills each month with a so-called "Administrative Charge"—currently $3.30 per month for each line—on top of the advertised and promised price.

3.    The Administrative Charge is not disclosed to customers either before or when they agree to purchase wireless service from Verizon, and in fact the Administrative Charge is never adequately or honestly disclosed to customers.  Nor do Verizon customers ever agree to—

or even have the opportunity to accept or reject—the Administrative Charge, which is unilaterally imposed by Verizon without its customers' consent.

4.    The Administrative Charge is a fictitious construct that enables Verizon to unlawfully charge its customers more per month for Verizon wireless services without having to advertise the higher monthly rates.

5.    Verizon first began sneaking the Administrative Charge into all of its post-paid wireless customers' bills in 2005, initially at a rate of $0.40 per month for each phone line on its customers' service plans.  Since then, Verizon has repeatedly increased the amount of the Administrative Charge on a regular basis.  The most recent increase occurred on June 23, 2022, when Verizon increased the Administrative Charge by 70% from $1.95 to the current rate of $3.30 per line.[1] The current amount of the Administrative Charge is $3.30 per line per month—a more than 8X increase from the original amount of the Charge.  Verizon has used the Administrative Charge as a revenue lever to covertly jack up its monthly service prices and to squeeze its existing subscribers for more cash whenever Verizon desires.  To date, Verizon has improperly collected <u>billions</u> of dollars in additional, unlawful charges from the proposed class members through its Administrative Charge scheme.

6.    The first time Verizon customers can possibly learn about the existence of the Administrative Charge, or the amount of the Charge, is on their monthly billing statements, which they begin receiving only <u>after</u> they have signed up for wireless service and are financially committed to their purchase and cannot cancel without penalty.

7.    Verizon then deliberately and affirmatively omits or misrepresents the so-called

---

[1] On June 23, 2022, at the same time that Verizon increased the Administrative Charge by 70% to $3.30 per line per month, Verizon changed the name of the Charge to the "Administrative and Telco Recovery Charge." This Complaint will refer to the charge as the "Administrative Charge."

Administrative Charge on its billing statements to further its scheme. Verizon's paper bills fail to mention the Administrative Charge at all, stating instead that a customer should "[c]heck your online bill for all surcharges, taxes and gov fees." Then on the online bill, Verizon omits the Administrative Charge from the "Monthly charges" section, where it actually belongs, and instead puts it in the "Surcharges" section, where it is lumped together with various government charges, taxes, and fees. Even worse, for years, Verizon explicitly and falsely stated on its monthly bills that the Administrative Charge is a surcharge imposed on subscribers to "cover the costs that are billed to us by federal, state or local governments." Thus, by Verizon's own design, Verizon's monthly billing statements have served to further Verizon's deceptive scheme and keep customers from realizing they are being overcharged.

8.      Notably, on a support page on its website, Verizon gives a <u>different</u> definition of the Administrative Charge, claiming that the Charge is tied to various operating costs of Verizon including telephone company interconnect charges and network facility and service fees—all of which are basic costs of providing wireless service, and which a reasonable consumer would expect to be included in the advertised price for any wireless service plan.

9.      But this is yet another misrepresentation by Verizon, as the Administrative Charge is <u>not</u>, in fact, tied to Verizon's costs such as interconnect charges and network facility fees. Verizon does not adjust the amount of the Administrative Charge based on changes to Verizon's <u>costs</u>. Rather, Verizon unilaterally sets and increases the amount of the Administrative Charge based on its internal <u>revenue targets</u>. This is corroborated by the fact that Verizon has more than tripled the amount of the monthly, per-line Administrative Charge since 2015 (from $0.95 to $3.30 per month per line), while during that same time period Verizon's costs have actually <u>decreased</u> significantly (like interconnection costs). Verizon simply uses the

4

Administrative Charge as a revenue lever to covertly jack up its monthly service prices and increase its revenues and profits whenever it desires—including increasing the Charge by 70% last June.

10.     Meanwhile, Verizon's misrepresentations on its bills that the Administrative Charge is imposed on subscribers to recover the costs billed to Verizon by the government were false statements of material fact intended to discourage customers who discovered the Administrative Charge from questioning or objecting to the Charge.

11.     In all events, Verizon should clearly and accurately state the true monthly prices for its post-paid wireless service plans in its price representations and advertising.  Verizon has failed to do so, and continues to fail to do so, choosing instead to deceptively increase its monthly rates—and by extension, its revenue and profit—by unilaterally imposing an extra-contractual, undisclosed Administrative Charge that is never agreed to by its customers, in contravention of the laws applicable to the relationship between Verizon and the class members.

12.     Plaintiffs, through this action, seek injunctive, declaratory, monetary, and statutory relief for themselves and the proposed classes to obtain redress and to end Verizon's unlawful policy of charging this deceptive, undisclosed additional Charge.

13.     To be clear, Plaintiffs are not seeking to regulate the existence or amount of Verizon's Administrative Charge.  Rather, Plaintiffs merely seek to compel Verizon to include notice of the existence and the amount of the Administrative Charge in the wireless service plan prices that Verizon advertises to Class members and the general public, to honestly and adequately disclose the Administrative Charge and its true nature and basis in Verizon's billing statements and communications with Class members at or before the time the wireless services contract is created, and to reimburse Class members for any and all undisclosed (or inadequately

disclosed) extra-contractual fees they were forced to pay.

14.     Verizon is primarily engaged in the business of selling services. Each cause of action brought by Plaintiffs against Verizon in this Complaint arises from and is limited to statements or conduct by Verizon that consist of representations of fact about Verizon's business operations or services that is or was made for the purpose of obtaining approval for, promoting, or securing sales of or commercial transactions in, Verizon's services or the statement is or was made in the course of delivering Verizon's services. Each cause of action brought by Plaintiffs against Verizon in this Complaint arises from and is limited to statements or conduct by Verizon for which the intended audience is an actual or potential buyer or customer, or a person likely to repeat the statements to, or otherwise influence, an actual or potential buyer or customer.

## II.    **THE PARTIES**

15.     Plaintiff Pamela M. Allen is a citizen and resident of Rockingham, North Carolina, and was a customer of Verizon's wireless service during the class period.  Like every other Class member, Plaintiff Allen has been victimized by the same uniform policies described in detail herein, in that she signed up for Verizon's wireless service in the manner described herein, received or was directed to the same uniformly-worded documents and/or websites described herein, received a Verizon bill which imposed the same undisclosed Administrative Charge in the same uniform language as described herein, and paid the Administrative Charge complained of herein.

16.     Plaintiff Lisa Baker is a citizen and resident of Indianapolis, Indiana, and was a customer of Verizon's wireless service during the class period.  Like every other Class member, Plaintiff Baker has been victimized by the same uniform policies described in detail herein, in that she signed up for Verizon's wireless service in the manner described herein, received or was

directed to the same uniformly-worded documents and/or websites described herein, received a Verizon bill which imposed the same undisclosed Administrative Charge in the same uniform language as described herein, and paid the Administrative Charge complained of herein.

17.    Plaintiff Briana Bell is a citizen and resident of Dallas, Texas, and was a customer of Verizon's wireless service during the class period.  Like every other Class member, Plaintiff Bell has been victimized by the same uniform policies described in detail herein, in that she signed up for Verizon's wireless service in the manner described herein, received or was directed to the same uniformly-worded documents and/or websites described herein, received a Verizon bill which imposed the same undisclosed Administrative Charge in the same uniform language as described herein, and paid the Administrative Charge complained of herein.

18.    Plaintiff Kimberly Blair is a citizen and resident of Howell, Michigan, and was a customer of Verizon's wireless service during the class period.  Like every other Class member, Plaintiff Blair has been victimized by the same uniform policies described in detail herein, in that she signed up for Verizon's wireless service in the manner described herein, received or was directed to the same uniformly-worded documents and/or websites described herein, received a Verizon bill which imposed the same undisclosed Administrative Charge in the same uniform language as described herein, and paid the Administrative Charge complained of herein.

19.    Plaintiff Caroline Bonham is a citizen and resident of Casa Grande, Arizona, and was a customer of Verizon's wireless service during the class period.  Like every other Class member, Plaintiff Bonham has been victimized by the same uniform policies described in detail herein, in that she signed up for Verizon's wireless service in the manner described herein, received or was directed to the same uniformly-worded documents and/or websites described herein, received a Verizon bill which imposed the same undisclosed Administrative Charge in

the same uniform language as described herein, and paid the Administrative Charge complained of herein

20.    Plaintiff Tammy Burke is a citizen and resident of Stokesdale, North Carolina, and was a customer of Verizon's wireless service during the class period.  Like every other Class member, Plaintiff Burke has been victimized by the same uniform policies described in detail herein, in that she signed up for Verizon's wireless service in the manner described herein, received or was directed to the same uniformly-worded documents and/or websites described herein, received a Verizon bill which imposed the same undisclosed Administrative Charge in the same uniform language as described herein, and paid the Administrative Charge complained of herein.

21.    Plaintiff Shauna Cavallaro is a citizen and resident of Diamond, Ohio, and was a customer of Verizon's wireless service during the class period.  Like every other Class member, Plaintiff Cavallaro has been victimized by the same uniform policies described in detail herein, in that she signed up for Verizon's wireless service in the manner described herein, received or was directed to the same uniformly-worded documents and/or websites described herein, received a Verizon bill which imposed the same undisclosed Administrative Charge in the same uniform language as described herein, and paid the Administrative Charge complained of herein.

22.    Plaintiff Erika Conley is a citizen and resident of Portland, Michigan, and was a customer of Verizon's wireless service during the class period.  Like every other Class member, Plaintiff Conley has been victimized by the same uniform policies described in detail herein, in that she signed up for Verizon's wireless service in the manner described herein, received or was directed to the same uniformly-worded documents and/or websites described herein, received a Verizon bill which imposed the same undisclosed Administrative Charge in the same uniform

8

language as described herein, and paid the Administrative Charge complained of herein.

23.    Plaintiff Kendra Conover is a citizen and resident of Shelbyville, Indiana, and was a customer of Verizon's wireless service during the class period.  Like every other Class member, Plaintiff Conover has been victimized by the same uniform policies described in detail herein, in that she signed up for Verizon's wireless service in the manner described herein, received or was directed to the same uniformly-worded documents and/or websites described herein, received a Verizon bill which imposed the same undisclosed Administrative Charge in the same uniform language as described herein, and paid the Administrative Charge complained of herein.

24.    Plaintiff Ryan Corbin is a citizen and resident of Elmhurst, Illinois, and was a customer of Verizon's wireless service during the class period. Like every other Class member, Plaintiff Corbin has been victimized by the same uniform policies described in detail herein, in that he signed up for Verizon's wireless service in the manner described herein, received or was directed to the same uniformly-worded documents and/or websites described herein, received a Verizon bill which imposed the same undisclosed Administrative Charge in the same uniform language as described herein, and paid the Administrative Charge complained of herein.

25.    Plaintiff Dylan Corbin is a citizen and resident of Villa Park, Illinois, and was a customer of Verizon's wireless service during the class period. Like every other Class member, Plaintiff Corbin has been victimized by the same uniform policies described in detail herein, in that Plaintiff Corbin signed up for Verizon's wireless service in the manner described herein, received or was directed to the same uniformly-worded documents and/or websites described herein, received a Verizon bill which imposed the same undisclosed Administrative Charge in the same uniform language as described herein, and paid the Administrative Charge complained

of herein.

26.     Plaintiff Laura Curry is a citizen and resident of Leesburg, Ohio, and was a customer of Verizon's wireless service during the class period.  Like every other Class member, Plaintiff Curry has been victimized by the same uniform policies described in detail herein, in that she signed up for Verizon's wireless service in the manner described herein, received or was directed to the same uniformly-worded documents and/or websites described herein, received a Verizon bill which imposed the same undisclosed Administrative Charge in the same uniform language as described herein, and paid the Administrative Charge complained of herein.

27.     Plaintiff Shakera Dyer is a citizen and resident of Canton, Georgia, and was a customer of Verizon's wireless service during the class period.  Like every other Class member, Plaintiff Dyer has been victimized by the same uniform policies described in detail herein, in that she signed up for Verizon's wireless service in the manner described herein, received or was directed to the same uniformly-worded documents and/or websites described herein, received a Verizon bill which imposed the same undisclosed Administrative Charge in the same uniform language as described herein, and paid the Administrative Charge complained of herein.

28.     Plaintiff Russell From is a citizen and resident of Middleton, Wisconsin, and was a customer of Verizon's wireless service during the class period.  Like every other Class member, Plaintiff From has been victimized by the same uniform policies described in detail herein, in that he signed up for Verizon's wireless service in the manner described herein, received or was directed to the same uniformly-worded documents and/or websites described herein, received a Verizon bill which imposed the same undisclosed Administrative Charge in the same uniform language as described herein, and paid the Administrative Charge complained of herein.

29.     Plaintiff Ashtin Gamblin is a citizen and resident of Colorado Springs, Colorado, and was a customer of Verizon's wireless service during the class period.  Like every other Class member, Plaintiff Gamblin has been victimized by the same uniform policies described in detail herein, in that Plaintiff Gamblin signed up for Verizon's wireless service in the manner described herein, received or was directed to the same uniformly-worded documents and/or websites described herein, received a Verizon bill which imposed the same undisclosed Administrative Charge in the same uniform language as described herein, and paid the Administrative Charge complained of herein.

30.     Plaintiff Ericka Gardner is a citizen and resident of West Bloomfield, Michigan, and was a customer of Verizon's wireless service during the class period.  Like every other Class member, Plaintiff Gardner has been victimized by the same uniform policies described in detail herein, in that she signed up for Verizon's wireless service in the manner described herein, received or was directed to the same uniformly-worded documents and/or websites described herein, received a Verizon bill which imposed the same undisclosed Administrative Charge in the same uniform language as described herein, and paid the Administrative Charge complained of herein.

31.     Plaintiff James Hensley is a citizen and resident of Asheville, North Carolina, and was a customer of Verizon's wireless service during the class period.  Like every other Class member, Plaintiff Hensley has been victimized by the same uniform policies described in detail herein, in that he signed up for Verizon's wireless service in the manner described herein, received or was directed to the same uniformly-worded documents and/or websites described herein, received a Verizon bill which imposed the same undisclosed Administrative Charge in the same uniform language as described herein, and paid the Administrative Charge complained

of herein.

32.     Plaintiff Adam Keller is a citizen and resident of Norwood, Massachusetts, and was a customer of Verizon's wireless service during the class period.  Like every other Class member, Plaintiff Keller has been victimized by the same uniform policies described in detail herein, in that he signed up for Verizon's wireless service in the manner described herein, received or was directed to the same uniformly-worded documents and/or websites described herein, received a Verizon bill which imposed the same undisclosed Administrative Charge in the same uniform language as described herein, and paid the Administrative Charge complained of herein.

33.     Plaintiff Krista Kirby is a citizen and resident of Chisago City, Minnesota, and was a customer of Verizon's wireless service during the class period.  Like every other Class member, Plaintiff Kirby has been victimized by the same uniform policies described in detail herein, in that she signed up for Verizon's wireless service in the manner described herein, received or was directed to the same uniformly-worded documents and/or websites described herein, received a Verizon bill which imposed the same undisclosed Administrative Charge in the same uniform language as described herein, and paid the Administrative Charge complained of herein.

34.     Plaintiff Jan Lombard is a citizen and resident of East Sandwich, Massachusetts, and was a customer of Verizon's wireless service during the class period.  Like every other Class member, Plaintiff Lombard has been victimized by the same uniform policies described in detail herein, in that she signed up for Verizon's wireless service in the manner described herein, received or was directed to the same uniformly-worded documents and/or websites described herein, received a Verizon bill which imposed the same undisclosed Administrative Charge in

the same uniform language as described herein, and paid the Administrative Charge complained of herein.

35.    Plaintiff Aaron Maxa is a citizen and resident of Pittsburgh, Pennsylvania, and was a customer of Verizon's wireless service during the class period.  From 2006 through July 2022, Plaintiff Maxa was a resident of, and was a customer of Verizon in, Falls Church, Virginia. Plaintiff Maxa moved to Pittsburgh, Pennsylvania in July 2022 and continued his Verizon service there. Like every other Class member, Plaintiff Maxa has been victimized by the same uniform policies described in detail herein, in that he signed up for Verizon's wireless service in the manner described herein, received or was directed to the same uniformly-worded documents and/or websites described herein, received a Verizon bill which imposed the same undisclosed Administrative Charge in the same uniform language as described herein, and paid the Administrative Charge complained of herein.

36.    Plaintiff Lindsey Moran is a citizen and resident of Virginia Beach, Virginia, and was a customer of Verizon's wireless service during the class period.  Like every other Class member, Plaintiff Moran has been victimized by the same uniform policies described in detail herein, in that she signed up for Verizon's wireless service in the manner described herein, received or was directed to the same uniformly-worded documents and/or websites described herein, received a Verizon bill which imposed the same undisclosed Administrative Charge in the same uniform language as described herein, and paid the Administrative Charge complained of herein.

37.    Plaintiff Jennifer Ocampo-Neubauer is a citizen and resident of Taneytown, Maryland, and was a customer of Verizon's wireless service during the class period.  Like every other Class member, Plaintiff Ocampo-Neubauer has been victimized by the same uniform

policies described in detail herein, in that she signed up for Verizon's wireless service in the manner described herein, received or was directed to the same uniformly-worded documents and/or websites described herein, received a Verizon bill which imposed the same undisclosed Administrative Charge in the same uniform language as described herein, and paid the Administrative Charge complained of herein.

38.    Plaintiff Angel Pachecho is a citizen and resident of Chicago, Illinois, and was a customer of Verizon's wireless service during the class period.  Like every other Class member, Plaintiff Pachecho has been victimized by the same uniform policies described in detail herein, in that Plaintiff Pachecho signed up for Verizon's wireless service in the manner described herein, received or was directed to the same uniformly-worded documents and/or websites described herein, received a Verizon bill which imposed the same undisclosed Administrative Charge in the same uniform language as described herein, and paid the Administrative Charge complained of herein.

39.    Plaintiff Lori Snyder is a citizen and resident of Covington, Ohio, and was a customer of Verizon's wireless service during the class period.  Like every other Class member, Plaintiff Snyder has been victimized by the same uniform policies described in detail herein, in that she signed up for Verizon's wireless service in the manner described herein, received or was directed to the same uniformly-worded documents and/or websites described herein, received a Verizon bill which imposed the same undisclosed Administrative Charge in the same uniform language as described herein, and paid the Administrative Charge complained of herein.

40.    Plaintiff Kathryn Taylor is a citizen and resident of Chicago, Illinois, and was a customer of Verizon's wireless service during the class period.  Like every other Class member, Plaintiff Taylor has been victimized by the same uniform policies described in detail herein, in

that she signed up for Verizon's wireless service in the manner described herein, received or was directed to the same uniformly-worded documents and/or websites described herein, received a Verizon bill which imposed the same undisclosed Administrative Charge in the same uniform language as described herein, and paid the Administrative Charge complained of herein.

41.    Plaintiff Anthony Vallecorsa is a citizen and resident of Pittsburgh, Pennsylvania, and was a customer of Verizon's wireless service during the class period.  Like every other Class member, Plaintiff Vallecorsa has been victimized by the same uniform policies described in detail herein, in that he signed up for Verizon's wireless service in the manner described herein, received or was directed to the same uniformly-worded documents and/or websites described herein, received a Verizon bill which imposed the same undisclosed Administrative Charge in the same uniform language as described herein, and paid the Administrative Charge complained of herein.

42.    Plaintiff Brad Young is a citizen and resident of Altoona, Pennsylvania, and was a customer of Verizon's wireless service during the class period.  Like every other Class member, Plaintiff Young has been victimized by the same uniform policies described in detail herein, in that he signed up for Verizon's wireless service in the manner described herein, received or was directed to the same uniformly-worded documents and/or websites described herein, received a Verizon bill which imposed the same undisclosed Administrative Charge in the same uniform language as described herein, and paid the Administrative Charge complained of herein.

43.    Defendant Cellco Partnership d/b/a Verizon Wireless is a wholly-owned subsidiary of Verizon Communications Inc., and is chartered under the laws of Delaware, with its principal place of operations and nerve center in Basking Ridge, New Jersey.  Thus, Defendant Cellco Partnership d/b/a Verizon Wireless is a citizen of Delaware and New Jersey.

44.     Defendant Verizon Communications, Inc. is chartered under the laws of Delaware, with its principal place of operations and nerve center in Basking Ridge, New Jersey. Thus, Defendant Verizon Communications Inc. is a citizen of Delaware and New Jersey.

45.     Defendants Cellco Partnership d/b/a Verizon Wireless and its corporate parent Verizon Communications, Inc., jointly created, implemented, participated in the collection of, and shared in the proceeds from, the unlawful bait-and-switch scheme at issue in this Complaint, namely, the imposition of the undisclosed, extra-contractual Administrative Charge to Class members.  As such, both Defendants are collectively referred to herein as "Verizon" or "Defendants."

## III.     JURISDICTION AND VENUE

46.     Jurisdiction over this matter is proper in the United States District Court under the Class Action Fairness Act in that this is a proposed class action, the Defendants are citizens of a different state than the Plaintiffs and the members of the proposed classes, and the amount in controversy exceeds $5 million.

47.     Venue is proper pursuant to 28 U.S.C. §1391 in the District of New Jersey, Newark Vicinage, in that Defendants are each New Jersey citizens who have their principal place of business and nerve center in Basking Ridge, New Jersey.

## IV.     FACTUAL ALLEGATIONS OF VERIZON'S DECEPTIVE ADMINISTRATIVE CHARGE SCHEME

48.     Verizon falsely advertises its wireless services at lower monthly rates than it actually charges customers by not disclosing, and not including in the advertised price, a so-called "Administrative Charge" which Verizon imposes each month on every line purchased by its post-paid wireless service customers.

49.     The Administrative Charge is not disclosed to customers either before or when they agree to purchase wireless service from Verizon, and in fact the Administrative Charge is never adequately or honestly disclosed to customers.  Nor do Verizon customers ever agree to—or even have the opportunity to accept or reject—the Administrative Charge, which is an extra-contractual charge unilaterally imposed by Verizon without its customers' consent.

50.     Verizon uses the Administrative Charge: (1) to charge more per month for each line of its wireless service without having to advertise the higher prices; and (2) as a way to covertly jack up the rates of its existing subscribers to extract additional revenue from its subscribers whenever it desires.

51.     Verizon continues to perpetrate this deceptive fee scheme even after the customer signs up.  Verizon made affirmative misrepresentations on its bills that the Administrative Charge is to recover the costs billed to Verizon by the government in order to discourage customers who discovered the Administrative Charge from questioning the charge.  And if a customer who happens to notice the Administrative Charge contacts Verizon via phone, web chat, or at a Verizon store to inquire about the charge, Verizon customer service and sales agents falsely tell the customer that the Administrative Charge is a tax or a government fee over which Verizon has no control, and/or is to cover the costs that are billed to Verizon by federal, state or local governments.

**A.     The Administrative Charge.**

52.     The Administrative Charge is a uniform, per-line flat charge that Verizon adds to the monthly bills of all Verizon post-paid wireless service customers across the country, including customers in Arizona, Colorado, Georgia, Illinois, Indiana, Maryland, Massachusetts, Michigan, Minnesota, North Carolina, Ohio, Pennsylvania, Texas, Virginia, and Wisconsin.

Verizon unilaterally imposes, increases, and sets the amount of the Administrative Charge at its sole discretion, without the consent of its customers.

53.     Verizon first began imposing the Administrative Charge in September 2005, at an initial rate of $0.40 per line per month.  The Charge was added to the bills of all post-paid wireless customers, including customers who had signed up for Verizon wireless services well before the Administrative Charge even existed.  Such customers were never given the opportunity to accept or reject Verizon's Administrative Charge.  Indeed, no Verizon customer has ever been given the opportunity to accept or reject the Administrative Charge, or any of Verizon's periodic increases thereof.

54.     Verizon increased the Administrative Charge to $0.70 per month per line starting in March 2007.  Until December 2015, the Administrative Charge remained under a dollar per month per line.  In December 2015, Verizon raised the Administrative Charge from $0.95 to $1.23 per month per line.  Verizon increased the Administrative Charge to $1.78 per line per month starting in August 2019.  Verizon then raised the Administrative Charge to the rate of $1.95 per line per month starting in August 2020.  Less than three months ago, on June 23, 2022, Verizon increased the Administrative Charge by another 70% from $1.95 to $3.30 per line per month.[2] The current amount of the Administrative Charge is $3.30 per line per month—a more than 8X increase from the original amount of the Charge.

55.     Verizon not only charges the Administrative Charge to each and every one of its post-paid customers on a monthly basis, but it also charges a separate monthly Administrative Charge for each and every phone line purchased by these customers.  Thus, if a customer has a

---

[2] On June 23, 2022, at the same time that Verizon increased the Administrative Charge by 70% to $3.30 per line per month, Verizon changed the name of the Charge to the "Administrative and Telco Recovery Charge." This Complaint will refer to the charge as the "Administrative Charge."

Verizon family plan with, e.g., five lines, that customer will be charged five Administrative Charges per month by Verizon (i.e., one Administrative Charge of $3.30 every month for each line purchased, for a total of $16.50 in Administrative Charges per month for five lines). Consequently, such a customer must pay Verizon at least $16.50 more per month—or $198 more per year—than the advertised and agreed-to price for Verizon wireless service.

56.    According to Verizon's 2021 annual report, Verizon currently has 91.5 million post-paid consumer phone lines in the United States. Verizon imposes the $3.30 monthly Administrative Charge on all 91.5 million of these wireless consumer phone lines, now collecting over $3.6 billion in revenue each year from its subscribers nationwide in deceptive Administrative Charges. To date, Verizon has improperly collected billions of dollars in unlawful, extra-contractual additional charges from Class members through its Administrative Charge scheme.

**B.    Verizon Fails to Disclose the Administrative Charge to Customers When They Sign Up.**

57.    At all relevant times, Verizon has aggressively advertised its post-paid wireless service plans through pervasive marketing directed at the consuming public throughout the United States, including via high-profile television, radio, and online advertisements, and on its website and through materials at its numerous corporate-owned retail stores and the stores of third party retailers (e.g., Costco, Best Buy, the Apple Store, and independent "Verizon Authorized Retailers") where customers can sign up for Verizon Wireless services.

58.    In all of these locations and through all of these channels, Verizon consistently and prominently advertises particular flat monthly prices for its post-paid wireless service plans, without disclosing or including the Administrative Charge in the advertised price. Neither the existence nor amount of the Administrative Charge (let alone its true nature or basis) is disclosed

to customers prior to or at the time they sign up for Verizon's service plans.

59.    By way of example only, Verizon ran three broad-scale national television advertisements in 2019, 2020, and 2021 that promoted the price for its post-paid wireless service plans as $35 per line per month when purchasing four lines.[3]  This flat monthly rate was prominently featured in the advertisements.  There was <u>no asterisk</u> next to the advertised price, and the only disclosure language was the phrase "Plus taxes and fees" below the monthly rate. The advertisements did not mention the Administrative Charge or what the additional "fees" were or their amounts.  Nor were the viewers directed anywhere to learn about the additional "fees."

60.    As another example, Verizon ran similar broad-scale national television advertisements in 2017 and 2018 that promoted the price for its post-paid wireless service plans as $40 per month per line when purchasing four lines.[4]  These ads, too, had no asterisk next to the advertised price, and the only disclosure language was the phrase "Plus taxes and fees" below the monthly rate.  The advertisements did not mention the Administrative Charge or what the additional "fees" were or their amounts.  Nor were the viewers directed anywhere to learn about the additional "fees."

61.    As another example, below (**Figure 1**) is a photo taken of advertising signage in a Verizon Wireless store in Bellevue, Washington on June 26, 2022:

---

[3] The 2021 ad can be viewed at: https://www.youtube.com/watch?v=O9Bh4EJPOKA.
The 2020 ad can be viewed at: https://www.youtube.com/watch?v=LFP9zmeS75I.
The 2019 ad can be viewed at: https://www.youtube.com/watch?v=jGBgLCFFVQA.
[4] The 2018 ad can be viewed at: https://www.ispot.tv/ad/dogb/verizon-unlimited-plans-huge-news-ft-thomas-middleditch.
The 2017 ad can be viewed at: https://www.youtube.com/watch?v=41lGIXfLfjo.

**Figure 1**: Signage in Verizon Wireless Store in Bellevue, WA (June 26, 2022)



The signage (which is the sole printed advertisement describing plans or plan prices in the Verizon store) prominently lists the prices for each of the 4 featured consumer wireless plans. To the right of the prominent pricing (e.g., "$90," "$80," "$70") is tiny text stating "Per line per month. Plus taxes & fees, With Auto Pay." Notably, *nowhere* on the sign—not even in the stream of miniscule text across the bottom of the sign—is the existence of, let alone the amount of, the Administrative Charge mentioned or disclosed (at the time of the photograph was taken the Administrative Charge was $3.30 per line per month).

62.    The phrase "Plus taxes and fees" does not constitute an adequate disclosure of the Administrative Charge by Verizon, and is understood by the reasonable consumer to refer to

legitimate taxes and government-related fees passed on by Verizon to its customers. (Meanwhile, on the customer bill, Verizon labels the Administrative Charge as a "Surcharge" next to government-related surcharges, and not as a "fee".)  Moreover, the Administrative Charge is, in fact, simply a disguised double-charge for the service itself.

1.     <strong>Verizon Fails to Disclose the Administrative Charge in Retail Stores.</strong>

63.     As has been the case for years, when a consumer shops for a wireless service plan at a Verizon corporate-owned store, the consumer is presented with the advertised and quoted monthly service plan prices, and nothing is disclosed to the consumer about the existence of the Administrative Charge.  The Administrative Charge is not mentioned or disclosed in any signage or advertisements anywhere in the store (see **Figure 1** above). Verizon stores use a uniform sales process in which a sales representative utilizes a proprietary sales application on an in-store iPad. Verizon does not disclose the Administrative Charge <u>anywhere</u> during this in-store sign-up process.  Verizon agents only tell customers the monthly plan price during this process (<u>e.g.</u>, the "$80/month Unlimited plan"), and never mention the monthly $3.30 per-line so-called "Administrative Charge."  Customers and prospective customers are not given the option to view the total monthly charges on the in-store iPad sales application, and sales agents are unaware of (or are trained to pretend to be unaware of) details beyond the fact that <u>taxes</u> will be charged on top of the advertised monthly service plan price.

64.     In fact, the first time consumers can possibly learn about the existence of the Administrative Charge, or its amount, is on their online monthly billing statement <u>after</u> signing up for Verizon wireless service—but consumers are not provided access to the online billing statement until at least one week after they sign up for the service and are already financially committed to their purchase.

65.     Customers may also sign up for Verizon wireless service plans at certain authorized third-party retail stores such as Best Buy, Apple, Walmart, Costco, and independently-owned "Verizon Authorized Retailers."  The customer experience in these stores is, in all material respects pertinent to this action, the same as in Verizon corporate-owned stores. Thus, if a consumer shops for a Verizon wireless service plan at a third-party retailer, the consumer is presented with only the advertised and quoted monthly service plan prices, and nothing is disclosed to the customer about the Administrative Charge.  At these stores, like at the Verizon corporate-owned stores, the customer purchase process is conducted through a tablet or other electronic display, the relevant content of which is determined by Verizon and does not include a disclosure of the Administrative Charge.  The pricing information and disclosures which are provided to customers in third-party stores are provided to the third-party retailers by Verizon.

**2.      Verizon Fails to Disclose the Administrative Charge in Telesales or Online Chat Sales.**

66.     Likewise, Verizon sales and customer service agents have been trained for years, as a matter of uniform company policy, to present consumers with the advertised flat monthly prices for its service plans without disclosing the Administrative Charge (just like in Verizon's online, television and print advertising).  If a potential customer calls Verizon's customer sales agents, or reaches out via web chat, and asks what if any other monthly charges will be added, the agents as a matter of uniform company policy falsely say that the only additions to the advertised prices (besides subscriptions to extra services or features) are taxes or government-related fees that are outside of Verizon's control.

**3.      Verizon Fails to Disclose the Administrative Charge on Its Website Advertising.**

67.     Likewise, for years, Verizon's consumer website has advertised its post-paid

wireless service plans by prominently featuring flat monthly prices for its service plans which do not include or disclose the Administrative Charge or its amount.

68.    For example, in October 2021, Verizon's website listed five post-paid wireless plan options under its post-paid "Unlimited" plans, and a configurator which showed different prices per line for each plan depending on how many lines (between one and four) the consumer selected.  See the screenshot of the Verizon website taken on October 31, 2021 at **Figure 2**

**Figure 2**: **Advertising on Verizon's Website (October 31, 2021)**



below:

69. Each of these options is presented as having a flat rate per month. The price does not have an asterisk, and the only disclosure language is below the price, stating: "Plus taxes & fees." Customers could click a link directly under those advertised prices to sign up for those services. Neither the existence nor the amount of the Administrative Charge (which at that time was in fact an additional $1.95 per month per line, e.g., $7.80 per month for four lines) was disclosed, even though Verizon fully intended to charge the Administrative Charge and knew its exact amount.

70. Again, the "Plus taxes and fees" language does not constitute an adequate disclosure because a reasonable consumer would understand "taxes and fees" to mean legitimate taxes and government-related fees passed on by Verizon to its customers (as opposed to a disguised double-charge for the wireless service itself). In fact, throughout the order process and on the final order page, Verizon displayed a line item charge called "Taxes and government fees," which line item could be expanded (by clicking a "+" sign) to display a list of the component (and legitimate) taxes and government fees. Thus, a reasonable consumer would assume and understand that those were the taxes and fees to which the phrase "Plus taxes & fees" in Verizon's ads referred. (Notably, on the online customer bill itself, Verizon labels the Administrative Charge not as a "fee," but rather as a "Surcharge.") Meanwhile, throughout the online purchase process, Verizon had no line item which contained or included the Administrative Charge, and Verizon never included the amount of the Administrative Charge in the presented and quoted monthly "Total" price.

**C.    Verizon Continues to Deceive Customers After They Sign Up.**

71. Verizon continues to deceive customers about the Administrative Charge and the true monthly price of its wireless services even after the customers have signed up.

72.     The first time Verizon customers can possibly learn about the existence of the Administrative Charge, or its amount, is on the online version of their monthly billing statement, which they can only view online, and which they can only access <u>after</u> they sign up for Verizon's wireless service and cannot cancel without paying a penalty.

73.     For those customers who receive a mailed paper bill, Verizon provides no notice whatsoever about the amount of the Administrative Charge. The paper bill does not contain a line item or listed amount for the Administrative Charge; the mailed paper bill appears to be an abridged version of the full online PDF version of the bill.

74.     Indeed, Verizon's paper bills fail to mention the Administrative Charge at all, stating instead that a customer should "[c]heck your online bill for all surcharges, taxes and gov fees."  Nowhere on the paper bill is there a line item for the Administrative Charge or any information regarding its amount.

75.     For those customers who are signed up for electronic billing and/or Auto Pay (automatic payment), Verizon gives notification by email or text message of only the total monthly charge, without listing or disclosing the existence of the Administrative Charge. Only if those customers created an online My Verizon profile to connect to their customer account could the customer login and get access to the full PDF version of the bill.

76.     Even if a customer created a My Verizon profile and took actions to view the electronic version of the bill on the My Verizon app or website, the My Verizon billing center is further designed to hide the Administrative Charge. The default view for the Verizon bill on the My Verizon app or website includes only the total monthly charge, and does not include any more detail or line items.

77.     If the customer desired to view the full detailed version of the bill (which is accessible only online, and only as a PDF), the customer would need to figure out how to navigate to and download and view the PDF file of the bill in the My Verizon app or website.

78.     For those customers who find and view the full PDF bill, Verizon then makes intentional misrepresentations about its plan prices and the nature of the Administrative Charge. On the full PDF version of the bill, Verizon excludes the Administrative Charge from the "Monthly charges" section, where it logically belongs, and instead puts the Administrative Charge in the "Surcharges" section where Verizon lumps it together with government charges. Even worse, for years, Verizon explicitly and falsely stated that the Administrative Charge is a **"surcharge"** imposed on subscribers to **"cover the costs that are billed to us by federal, state or local governments."**

79.     Thus, Verizon's billing statements do not constitute an adequate disclosure, even belatedly.  Instead, Verizon's billing statements further its fraudulent scheme and keep customers from realizing they are being overcharged.

80.     Below (**Figure 3**) is an excerpt from the second page of Plaintiff Shauna Cavallaro's billing statement from November 2020, where Verizon declares that **"Surcharges"** (which is how Verizon labels the Administrative Charge) are to "**cover the costs that are billed to us by federal, state or local governments…"**.  A red box is added to the bill image below to highlight the relevant text:

**Figure 3**: Plaintiff Shauna Cavallaro's Verizon Bill page 2 (November 2020)



81.    Below (**Figure 4**) is an excerpt from the third page of Plaintiff Cavallaro's same November 2020 bill, where Verizon labels the so-called **"Administrative Charge"** as being a **"Surcharge,"** i.e., as a charge imposed on subscribers to recover costs billed to Verizon by the government.  The Administrative Charge charged by Verizon on Ms. Cavallaro's bill is highlighted in a red box below, under the section of the bill entitled **"Surcharges"**:

**Figure 4**: Plaintiff Shauna Cavallaro's Verizon Bill page 3 (November 2020)



82.    As reflected above, Verizon excludes the Administrative Charge from the "Monthly charges and credits" section of the online bill.  Verizon instead disguises the invented Administrative Charge by putting it in the "Surcharges" section where it is lumped together with true government costs billed to Verizon such as the "Federal Universal Service Charge," the "OH [Ohio] Tax Recovery Surcharge," and the "OH Reg Fee."

83.    Verizon's labeling and description of the Administrative Charge as a "Surcharge" imposed on subscribers to "cover the costs that are billed to us by federal, state or local governments" is a false statement of material fact intended to fool its customers.

84.    Notably, on a support page on its website, Verizon gives a <u>different</u> definition of the Administrative Charge, claiming it is charged to "defray" "charges we, or our agents, pay local telephone companies for delivering calls from our customers to their customers" (<u>i.e.</u>, interconnect charges) and "fees and assessments on our network facilities and services."  But interconnect charges and network facility and service fees are among the basic costs of providing wireless service, which a reasonable consumer would expect to be included in the advertised price for a wireless service plan.

85.    Indeed, prior to September 2005 (when Verizon began charging the Administrative Charge to its customers), interconnect charges and network facility and service fees were <u>included</u> in Verizon's advertised price for its wireless service plans.

86.    Moreover, the Administrative Charge that Verizon unilaterally chooses to impose is <u>not</u>, in fact, tied to Verizon's costs such as interconnect charges and network facility and service fees.  Verizon does not adjust the amount of the Administrative Charge based on changes to Verizon's <u>costs</u>.  Rather, Verizon sets and increases the amount of the Administrative Charge based on company-wide <u>operating income targets</u> set by Verizon senior management.  Verizon uses the Administrative Charge as a revenue lever to covertly jack up its monthly service prices and to squeeze its existing subscribers for more cash whenever Verizon desires, thereby increasing Verizon's revenue.  This is corroborated by the fact that Verizon has more than tripled the amount of the monthly Administrative Charge since 2015 (from $0.95 to $3.30 per line), while during that same time period, Verizon's costs have actually significantly <u>decreased</u> (like interconnection costs).

87.    Thus, by Verizon's own design, the monthly billing statements (whether printed or electronic) serve to further Verizon's scheme and keep customers from realizing they are

being overcharged.

88.     And, because Verizon has increased the Administrative Charge by a small amount each time ($1.35 or less each time), if a customer noticed that the bill total was slightly higher than the previous month, the customer would reasonably assume that the increase was a result of legitimate taxes and other government-related charges, which customers understand can vary month-to-month.

### D.     **Customers Cannot Cancel Without Penalty.**

89.     Even if a customer notices the Administrative Charge on his or her very first bill, Verizon's stated and posted policies prevent its customers from backing out of its service plans without penalty.

90.     First, when customers sign up they pay a one-time activation fee of $35.00 that is refundable for only three days—well before they ever receive access to their first monthly bill, which does not occur until more than a week after they sign up.

91.     Second, customers who signed up for a two-year service commitment (the majority of customers until at least 2016) were charged an early termination fee of up to $350 if they cancelled their service more than 14 days after purchase.  (Again, customers cannot even receive notice of or view their first billing statement until at least a week after signing up.)  And even if a person managed to cancel his or her service within the 14-day period (which required returning all purchased equipment in that time period), the customer still was required to pay for his or her service through the date of cancellation.

92.     Third, many customers purchase devices (such as new phones) with their service plans; indeed, Verizon markets devices and wireless service plans in bundles.  The devices can only be returned to Verizon within the first 30 days after purchase.  If customers return a device

within 30 days of purchase, they still must pay a $50 restocking fee. If they wait longer than 30 days, it is too late, and they are on the hook for the full purchase price of the device.

93.     Fourth, since approximately 2013, Verizon has offered installment plans to pay for new devices that are tied to customers' service plans. Instead of a one-year or two-year service commitment, many Verizon wireless customers today ostensibly have a month-to-month service plan but sign 24-month or 30-month installment agreements with Verizon under which customers pay for their mobile phone (i.e., the device) in monthly installments. For example, a customer would pay, for an $800 phone, an equipment "installment" charge of $33.33 on each monthly Verizon bill for 24 months. <u>If a customer cancels his or her service plan any time before the installment plan is paid off, the full outstanding balance of the device becomes due immediately in a single balloon payment</u>. Even if the customer noticed the Administrative Charge on his or her very first monthly statement (despite Verizon's efforts to disguise it and falsely describe it as a government cost), and the customer therefore immediately chooses to cancel her service, Verizon will demand that the customer immediately pay the entire remaining $800 balance on the device all at once. (If the customer returns the device within the 30-day return deadline, the customer must still pay the restocking fee mentioned above). In this way, the installment plan balloon payment is similar to an early termination fee, creating a large immediate cost to cancelling the Verizon service plan once customers learn the actual monthly prices of their plans are higher than advertised.

94.     The activation fee, restocking fee, early termination fee, and installment balloon payment described above all function as ways to penalize and deter customers from cancelling their Verizon wireless service after signing up, and Verizon's policies (including the cancellation/return periods and how they relate to the timing of the billing statements) are

deliberately and knowingly designed by Verizon to lock customers in if they ever deduce that they are being charged more per month than advertised.

95.     Because the initial amount of the Administrative Charge was less than a dollar, and because each of the subsequent increases to the Administrative Charge has been $1.35 or less, Verizon knows that its customers are unlikely to notice the increased charge on the total price of their monthly bills.  Further, given that taxes and other government-related charges can already vary by small amounts from month to month, Verizon knows that customers reasonably expect small changes in the total amount billed each month and will not be able to tell that Verizon imposed or increased the Administrative Charge simply by comparing the total amount billed that month to the total billed in the prior month or months.

96.     Each time that Verizon has increased the Administrative Charge, Verizon has intentionally not identified or disclosed on the first bill containing the increase that the Administrative Charge is higher than it was in the previous month.  Even a customer who noticed the higher total charge and who then examined the full billing statement would have no notice that Verizon had increased the amount of the Administrative Charge.

97.     The only place Verizon mentions to existing customers that it plans to increase the Administrative Charge is on the full version of the monthly billing statement prior to the month it is actually raised.  Even then, each time the Administrative Charge was increased, Verizon buried that inadequate "disclosure" at the very end of the bill, among a mix of information and notices unrelated to price increases.

98.     For example, when Verizon increased the Administrative Charge to $1.95 per month in August 2020, Verizon hid its only mention of the upcoming increase at the very end of the full PDF of the July 2020 bill—i.e., the bill that was issued the month before the actual

33

increase.  This sole mention was buried eleven paragraphs into a seldom-read section at the tail-end of the bill entitled "Additional Information."  The first ten paragraphs of this section were standard, form paragraphs found in nearly every monthly bill covering arcane topics like "Customer Proprietary Network Information (CPNI)" and other topics irrelevant to most customers like "Bankruptcy Information."  Likewise, when Verizon increased the Administrative Charge to $3.30 per month in July 2022, Verizon hid the only mention of the upcoming increase at the very end of the full PDF of the prior June 2022 bill in the same seldom-read "Additional Information" section after several paragraphs of text about the same "Customer Proprietary Network Information (CPNI)." Neither the title of this section nor its first several paragraphs would alert customers that a price increase would be announced below.

99.     Even if customers noticed that Verizon imposed or increased the Administrative Charge, they would have to pay penalties, as described above, if they wished to cancel their Verizon service.  Indeed, Verizon has drafted its contractual terms regarding cancellation fees and the like so that there are no exceptions, meaning these cancellation fees and similar costs would apply no matter how high Verizon chose to unilaterally increase the Administrative Charge.

100.     Further, as described above in Section IV.C. (at ¶¶ 68–85), Verizon has designed its monthly billing statements (both paper and electronic) to further Verizon's scheme and to keep customers from realizing they are being overcharged.

101.     Regardless, Verizon should be disclosing the existence and amount of the Administrative Charge as part of the advertised monthly price for its service plans, which as discussed herein it has never done and still does not do.  Verizon's failure to do so, in and of itself, constitutes an unfair, deceptive, and unconscionable business practice that is actionable

under the claims pled herein.  Verizon uses the Administrative Charge to charge more than advertised for its services, and as a lever to covertly and improperly raise additional revenue from its existing customers at Verizon's whim.

102.    Again, Plaintiffs are not seeking to regulate the existence or amount of the Administrative Charge.  Rather, Plaintiffs merely seek to compel Verizon to include the existence and amount of the Administrative Charge in the wireless service plan prices it advertises to potential and existing customers, to honestly and adequately disclose the Administrative Charge and its true nature and basis in Verizon's billing statements and communications with Class members, and to reimburse Class members for any and all undisclosed (or inadequately disclosed), Administrative Charges which were in fact double-charges for service that they were forced to pay without their knowledge or consent.

## V.    PLAINTIFFS' FACTUAL ALLEGATIONS

103.    All Plaintiffs are current wireless customers of Verizon, or were during the relevant class period.

104.    When Plaintiffs purchased their wireless service plans, Verizon prominently advertised and quoted to them that their plans would cost a particular monthly price.  Verizon did not disclose to Plaintiffs, at any time before or when they signed up, that Verizon would charge them an Administrative Charge in addition to the advertised and promised monthly price.

105.    Despite this, Verizon has charged each Plaintiff an Administrative Charge of up to $3.30 per line per month via their monthly bill.

106.    Indeed, Verizon continues to charge each Plaintiff an Administrative Charge of $3.30 per line per month on their monthly bills.

107.    Verizon never adequately disclosed the Administrative Charge to Plaintiffs in any

form or fashion, and Plaintiffs never agreed to pay the Administrative Charge to Verizon.  In

fact, Plaintiffs were not aware of the existence or true nature of the Administrative Charge until

well after they signed up for service, if at all.

108.    Specifically, Verizon never provided Plaintiffs with notice or adequate notice that

they would be (or were being) charged the Administrative Charge—neither at sign-up, when

purchasing a new phone, on Plaintiffs' monthly bills, on Verizon's website, nor otherwise.

Further, Verizon did not provide Plaintiffs with any information regarding the true nature or

basis of the Administrative Charge, and never provided Plaintiffs with any opportunity to agree

or object to the Charge.  In fact, no Plaintiff ever agreed to pay the Administrative Charge to

Verizon.

109.    Moreover, Verizon affirmatively misrepresented the true nature of the

Administrative Charge on Plaintiffs' monthly bills, as described herein.

110.    Over the years, Verizon has routinely increased the amount of the Administrative

Charge that it charged to Plaintiffs.  Yet Verizon never adequately disclosed to Plaintiffs at any

time that the Administrative Charge would or might increase, never provided Plaintiffs with

adequate notice of such increase, and never provided Plaintiffs with any opportunity to agree or

object to the increase.  In fact, no Plaintiff ever agreed to an increase of the Administrative

Charge.

111.    Because the Administrative Charge was not included in the quoted and promised

price for Plaintiffs' wireless plans, and then was disguised and misrepresented in the customer

bills, Verizon has for years unilaterally been charging Plaintiffs more each month than what

Plaintiffs agreed and contracted to pay.

112.    Plaintiffs did not expect (and were never told) that Verizon would actually charge

them a so-called Administrative Charge on top of the advertised service plan price, or that the true price of the services they had agreed to purchase would include an additional Administrative Charge for each phone line which Verizon could and would unilaterally increase at its desire. That information was material to Plaintiffs. Had Plaintiffs known that information, they would not have been willing to pay as much for their wireless plans and would have acted differently.

113.   Plaintiffs have a legal right to rely now, and in the future, on the truthfulness and accuracy of Verizon's representations and advertisements regarding its wireless service plan prices. Plaintiffs believe that they were given the services that Verizon promised them—just not at the prices that Verizon promised and advertised to them, and that Plaintiffs agreed to pay.

114.   Each Plaintiff remains a Verizon post-paid wireless customer as of this filing. Plaintiffs cannot cancel their Verizon wireless service without paying significant penalties. Plaintiffs will continue their Verizon service, and will sign up for Verizon post-paid wireless service and purchase phones from Verizon in the future. However, Plaintiffs want to be confident that the advertised and quoted prices for Verizon's service plans are the true and full prices for those services (i.e., that the prices include all applicable discretionary monthly service charges such as the Administrative Charge), and that all discretionary charges like the Administrative Charge are adequately disclosed. And, if Verizon introduces any new or invented discretionary monthly service charge (like it did with the Administrative Charge), Plaintiffs want to be confident that Verizon will include the amount of that service charge in the advertised and quoted service plan price, and that such price is included in the plan price before Plaintiffs and other class members sign up for Verizon's services. Plaintiffs will be harmed if, in the future, they are left to guess as to whether Verizon's representations are accurate and whether there are omissions and misrepresentations of material facts regarding the wireless service plans

being advertised and represented to them.

## VI. CLASS ALLEGATIONS

115.    Plaintiffs bring this lawsuit as a class action pursuant to Federal Rules of Civil

Procedure 23(a), (b)(2), and (b)(3).

116.    Plaintiffs seek certification of the following Nationwide Class:

> **All residents of the United States who subscribed to a post-paid wireless service plan from Verizon and were charged and paid what Verizon labeled an "Administrative Charge" or "Administrative and Telco Recovery Charge" within the applicable statutes of limitations, specifically excluding citizens of California, New Jersey, Florida, Hawaii, New York, New Mexico, Oregon, and Washington and any consumers who are part of the American Arbitration Association Verizon Multiple Case Filings Case No. 01-22-0003-9225.**

117.    Plaintiff Bonham seeks certification of the following Sub-Class:

> **All citizens of Arizona who subscribed to a post-paid wireless service plan from Verizon and were charged and paid what Verizon labeled an "Administrative Charge" or "Administrative and Telco Recovery Charge" within the applicable statutes of limitations, specifically excluding any consumers who are part of the American Arbitration Association Verizon Multiple Case Filings Case No. 01-22-0003-9225.**

118.    Plaintiff Gamblin seeks certification of the following Sub-Class:

> **All citizens of Colorado who subscribed to a post-paid wireless service plan from Verizon and were charged and paid what Verizon labeled an "Administrative Charge" or "Administrative and Telco Recovery Charge" within the applicable statutes of limitations, specifically excluding any consumers who are part of the American Arbitration Association Verizon Multiple Case Filings Case No. 01-22-0003-9225.**

119.    Plaintiff Dyer seeks certification of the following Sub-Class:

> **All citizens of Georgia who subscribed to a post-paid wireless service plan from Verizon and were charged and paid what Verizon labeled an "Administrative Charge" or**

**"Administrative and Telco Recovery Charge" within the applicable statutes of limitations, specifically excluding any consumers who are part of the American Arbitration Association Verizon Multiple Case Filings Case No. 01-22-0003-9225.**

120. Plaintiffs Dylan Corbin, Ryan Corbin, Pachecho, and Taylor seek certification of

the following Sub-Class:

**All citizens of Illinois who subscribed to a post-paid wireless service plan from Verizon and were charged and paid what Verizon labeled an "Administrative Charge" or "Administrative and Telco Recovery Charge" within the applicable statutes of limitations, specifically excluding any consumers who are part of the American Arbitration Association Verizon Multiple Case Filings Case No. 01-22-0003-9225.**

121. Plaintiffs Baker and Conover seek certification of the following Sub-Class:

**All citizens of Indiana who subscribed to a post-paid wireless service plan from Verizon and were charged and paid what Verizon labeled an "Administrative Charge" or "Administrative and Telco Recovery Charge" within the applicable statutes of limitations, specifically excluding any consumers who are part of the American Arbitration Association Verizon Multiple Case Filings Case No. 01-22-0003-9225.**

122. Plaintiff Ocampo-Neubauer seeks certification of the following Sub-Class:

**All citizens of Maryland who subscribed to a post-paid wireless service plan from Verizon and were charged and paid what Verizon labeled an "Administrative Charge" or "Administrative and Telco Recovery Charge" within the applicable statutes of limitations, specifically excluding any consumers who are part of the American Arbitration Association Verizon Multiple Case Filings Case No. 01-22-0003-9225.**

123. Plaintiffs Keller and Lombard seek certification of the following Sub-Class:

**All citizens of Massachusetts who subscribed to a post-paid wireless service plan from Verizon and were charged and paid what Verizon labeled an "Administrative Charge" or**

**"Administrative and Telco Recovery Charge" within the applicable statutes of limitations, specifically excluding any consumers who are part of the American Arbitration Association Verizon Multiple Case Filings Case No. 01-22-0003-9225.**

124. Plaintiffs Blair, Conley, and Gardner seek certification of the following Sub-Class:

**All citizens of Michigan who subscribed to a post-paid wireless service plan from Verizon and were charged and paid what Verizon labeled an "Administrative Charge" or "Administrative and Telco Recovery Charge" within the applicable statutes of limitations, specifically excluding any consumers who are part of the American Arbitration Association Verizon Multiple Case Filings Case No. 01-22-0003-9225.**

125. Plaintiff Kirby seeks certification of the following Sub-Class:

**All citizens of Minnesota who subscribed to a post-paid wireless service plan from Verizon and were charged and paid what Verizon labeled an "Administrative Charge" or "Administrative and Telco Recovery Charge" within the applicable statutes of limitations, specifically excluding any consumers who are part of the American Arbitration Association Verizon Multiple Case Filings Case No. 01-22-0003-9225.**

126. Plaintiffs Allen, Burke, and Hensley seek certification of the following Sub-Class:

**All citizens of North Carolina who subscribed to a post-paid wireless service plan from Verizon and were charged and paid what Verizon labeled an "Administrative Charge" or "Administrative and Telco Recovery Charge" within the applicable statutes of limitations, specifically excluding any consumers who are part of the American Arbitration Association Verizon Multiple Case Filings Case No. 01-22-0003-9225.**

127. Plaintiffs Cavallaro, Curry, and Snyder seek certification of the following Sub-Class:

**All citizens of Ohio who subscribed to a post-paid wireless service plan from Verizon and were charged and paid what**

**Verizon labeled an "Administrative Charge" or "Administrative and Telco Recovery Charge" within the applicable statutes of limitations, specifically excluding any consumers who are part of the American Arbitration Association Verizon Multiple Case Filings Case No. 01-22-0003-9225.**

128.    Plaintiffs Vallecorsa, and Young seek certification of the following Sub-Class:

**All citizens of Pennsylvania who subscribed to a post-paid wireless service plan from Verizon and were charged and paid what Verizon labeled an "Administrative Charge" or "Administrative and Telco Recovery Charge" within the applicable statutes of limitations, specifically excluding any consumers who are part of the American Arbitration Association Verizon Multiple Case Filings Case No. 01-22-0003-9225.**

129.    Plaintiff Bell seeks certification of the following Sub-Class:

**All citizens of Texas who subscribed to a post-paid wireless service plan from Verizon and were charged and paid what Verizon labeled an "Administrative Charge" or "Administrative and Telco Recovery Charge" within the applicable statutes of limitations, specifically excluding any consumers who are part of the American Arbitration Association Verizon Multiple Case Filings Case No. 01-22-0003-9225.**

130.    Plaintiffs Moran and Maxa seek certification of the following Sub-Class:

**All citizens of Virginia who subscribed to a post-paid wireless service plan from Verizon and were charged and paid what Verizon labeled an "Administrative Charge" or "Administrative and Telco Recovery Charge" within the applicable statutes of limitations, specifically excluding any consumers who are part of the American Arbitration Association Verizon Multiple Case Filings Case No. 01-22-0003-9225.**

131.    Plaintiff From seeks certification of the following Sub-Class:

**All citizens of Wisconsin who subscribed to a post-paid wireless service plan from Verizon and were charged and paid what Verizon labeled an "Administrative Charge" or "Administrative and Telco Recovery Charge" within the**

**applicable statutes of limitations, specifically excluding any consumers who are part of the American Arbitration Association Verizon Multiple Case Filings Case No. 01-22-0003-9225.**

132.    This Court should apply the discovery rule to extend any applicable limitations period (and the corresponding Class periods) to the date on which Verizon first began charging the Administrative Charge (which, based on the investigation of Plaintiffs' counsel, is September 2005). The nature of Verizon's misconduct was non-obvious and intentionally concealed from its subscribers. Verizon even designed its monthly billing statements to further its scheme and to prevent customers from realizing they were being overcharged. As a result of Verizon's intentional misconduct, omissions, and affirmative misrepresentations throughout the customer lifecycle, neither Plaintiffs nor the members of the classes could have, through the use of reasonable diligence, learned of the accrual of their claims against Verizon at an earlier time.

133.    Specifically excluded from the proposed classes are Verizon and any entities in which Verizon has a controlling interest, Verizon's agents and employees, the bench officers to whom this civil action is assigned, and the members of each bench officer's staff and immediate family.

134.    **Numerosity**.  The members of each Class and Sub-Class are so numerous that joinder of all members would be impracticable.  While Plaintiffs do not know the exact number of class members prior to discovery, upon information and belief, there are at least 100,000 members in each Class and state Sub-Class (and millions of Class members in total).  The exact number and identities of Class and Sub-Class members are contained in Verizon's records and can be easily ascertained from those records.

135.    **Commonality and Predominance**.  All claims in this action arise exclusively from the uniform policies and procedures of Defendants as outlined herein.  This action involves

multiple common questions which are capable of generating class-wide answers that will drive the resolution of this case. These common questions predominate over any questions affecting individual Class and Sub-Class members, if any. These common questions include, but are not limited to, the following:

      a.      Whether Verizon employs a uniform policy of charging the Administrative Charge to members of the proposed classes;

      b.      Whether Verizon adequately and accurately disclosed the existence of the Administrative Charge, its nature or basis, or its amount, to Plaintiffs and the classes prior to their purchase of Verizon's wireless service;

      c.      Whether Verizon ever adequately and accurately disclosed the existence of the Administrative Charge, its nature or basis, or its amount, to Plaintiffs and the classes;

      d.      What is the nature or purpose of the Administrative Charge;

      e.      Whether Verizon's descriptions of the Administrative Charge are false and/or misleading;

      f.      Whether and to what extent the Administrative Charge is a surcharge imposed on subscribers to "cover the costs that are billed to us by federal, state or local governments;"

      g.      Whether the Administrative Charge and the true price of Verizon's post-paid wireless services are material information, such that a reasonable consumer would find that information important to the consumer's purchase decision;

      h.      Whether Verizon must include the amount of the Administrative Charge in the advertised and quoted service plan price;

i.      Whether Verizon must disclose the existence or amount of the Administrative Charge when signing up consumers for its wireless service plans;

j.      Whether Verizon must include the amount of the Administrative Charge in the total monthly service price quoted to consumers during the sign-up process for its wireless service plans;

k.      Whether Verizon's policy and practice of advertising and quoting the monthly prices of its wireless service plans without including the amount of the Administrative Charge is false, deceptive, or misleading;

l.      Whether it was deceptive or unfair for Verizon not to disclose, or to inadequately or inaccurately disclose, the Administrative Charge, its dollar amount, or the fact that Verizon could choose to raise its amount at any time, as part of the advertised and promised price of its wireless services;

m.      Whether a reasonable consumer is likely to be deceived by Verizon's conduct and omissions alleged herein;

n.      Whether Verizon has violated the implied covenant of good faith and fair dealing, implied in its contracts with Plaintiffs and the classes, by imposing and increasing the Administrative Charge; and

o.      Whether Plaintiffs and the classes are entitled to an order enjoining Verizon from engaging in the misconduct alleged herein.

136.    **Typicality**.  Plaintiffs, like all Class and Sub-Class members, are current or former subscribers of Verizon's wireless service plans who were charged higher monthly rates than quoted at the time of subscription and/or whose rates have been surreptitiously increased by Verizon's unilateral imposition and systematic raising of the Administrative Charge.  Their

claims all arise from the same course of conduct by Verizon, are based on the same legal theories, and face the same potential defenses. Plaintiffs' claims are typical of all class members' claims. Plaintiffs are each a member of the Class and Sub-Class they seek to represent. All claims of Plaintiffs and the classes arise from the same course of conduct, policy and procedures as outlined herein.

137. **Adequacy**. Plaintiffs and their counsel will fairly and adequately protect class members' interests. Plaintiffs seek the same relief for themselves as for every other class member, have no interests antagonistic to class members' interests, and are committed to representing the best interests of the classes. Moreover, Plaintiffs have retained counsel with considerable experience and success in prosecuting complex class action and consumer protection cases.

138. **Superiority**. A class action is superior to all other available methods for fairly and efficiently adjudicating this controversy. Each class member's interests are small compared to the burden and expense required to litigate each of his or her claims individually, so it would be impractical and would not make economic sense for class members to seek individual redress for Verizon's conduct. Individual litigation would add administrative burden on the courts, increasing the delay and expense to all parties and to the court system. Individual litigation would also create the potential for inconsistent or contradictory judgments regarding the same uniform conduct by Verizon. A single adjudication would create economies of scale and comprehensive supervision by a single judge. Moreover, Plaintiffs do not anticipate any difficulties in managing a class action trial in this case.

139. By its conduct and omissions alleged herein, Verizon has acted and refused to act on grounds that apply generally to the classes, such that final injunctive relief and/or declaratory

relief is appropriate respecting each class as a whole.

140.    Without the proposed class action, Verizon will likely retain the benefits of its wrongdoing and will continue the complained-of practices, which will result in further damages to Plaintiffs and class members.

## COUNT I

### Unjust Enrichment

### By All Plaintiffs on Behalf of the Nationwide Class

141.    Plaintiffs repeat and incorporate by reference all preceding paragraphs as if fully set forth herein.

142.    Plaintiffs bring this claim on behalf of themselves and the Nationwide Class.

143.    By the acts alleged herein, Plaintiffs and the Nationwide Class members have conferred substantial benefits on Defendants and Defendants have knowingly and willingly accepted and enjoyed these benefits.

144.    Defendants either knew or should have known that the payments rendered by Plaintiffs and the Nationwide Class members were given and received with the expectation that the services would be provided at the price represented and warranted.  Despite this, Defendants demanded amounts from Plaintiffs and Nationwide Class members which were higher than what Defendants previously quoted and promised, and Defendants disguised and/or misrepresented the nature of those extra charges on the customer bills.

145.    For Defendants to retain the benefit of the excess payments under these circumstances is inequitable.

146.    Defendants, through deliberate misrepresentations or omissions in connection with the advertising, marketing, promotion, and sale of its wireless service plans, reaped benefits, which resulted in Defendants' wrongful receipt of profits.

147.   Equity demands disgorgement of Defendants' ill-gotten gains.  Defendants will be unjustly enriched unless Defendants are ordered to disgorge those profits for the benefit of Plaintiffs and the Nationwide Class members.

148.   As a direct and proximate result of Defendants' wrongful conduct and unjust enrichment, Plaintiffs and the Nationwide Class members are entitled to the institution of and restitution from a constructive trust disgorging all profits, benefits, and other compensation obtained by Defendants through this inequitable conduct.

## COUNT II

### Breach of Implied Covenant of Good Faith and Fair Dealing

### By All Plaintiffs on Behalf of the Nationwide Class

149.   Plaintiffs repeat and incorporate by reference all preceding paragraphs as if fully set forth herein.

150.   Plaintiffs bring this claim on behalf of themselves and the Nationwide Class.

151.   By operation of law, there existed an implied contract for the sale of services between Defendants and each Plaintiff and Nationwide Class member who purchased the wireless services described herein.

152.   By operation of law, there existed an implied duty of good faith and fair dealing in each such contract.

153.   Verizon has violated the covenant of good faith and fair dealing by its conduct alleged herein.

154.   Verizon has abused any discretion it purportedly had under any applicable contract to impose or increase the Administrative Charge. For example:

a. Verizon imposed and has increased the Administrative Charge as a covert way to increase customers' monthly rates without having to advertise such higher rates;

b. Verizon has increased the Administrative Charge to covertly and improperly squeeze additional cash from existing subscribers at Verizon's desire;

c. Verizon omits the Administrative Charge and its amount from the mailed paper version of the bill;

d. On the full PDF version of the bill (which is only available online), Verizon lists the Administrative Charge next to actual government costs; and

e. On the full PDF version of the bill (which is only available online), Verizon falsely described the Administrative Charge as a surcharge imposed to cover costs billed to Verizon by the government.

155. Verizon meanwhile utilizes the activation fee, restocking fee, early termination fee, and installment balloon payment as ways to penalize and discourage customers from freely cancelling their services if they learn that Verizon has charged them more than promised for its services via imposition of, and/or increases to, the Administrative Charge. And Verizon's policies (including the cancellation/return periods and how they relate to the timing of the billing statements) are deliberately and knowingly designed by Verizon to lock customers in if and when they deduce that they are being charged more per month than promised.

156. Verizon's imposition and increasing of the Administrative Charges defied customers' reasonable expectations, was objectively unreasonable, and frustrated the basic terms of the parties' agreement. Verizon's conduct and actions alleged herein were done in bad faith.

157. Verizon's conduct described herein has had the effect, and the purpose, of denying Plaintiffs and Nationwide Class members the full benefit of their bargains with Verizon.

158.    Plaintiffs and the Nationwide Class members have performed all, or substantially all, of the obligations imposed on them under any applicable agreements with Verizon. There is no legitimate excuse or defense for Verizon's conduct.

159.    Any attempts by Verizon to defend its overcharging through reliance on supposed contractual provisions will be without merit. Any such provisions are either inapplicable or are unenforceable because they are void, illusory, lacking in mutuality, are invalid exculpatory clauses, violate public policy, are procedurally and substantively unconscionable, and are unenforceable in light of the deceptive and hidden nature of Verizon's misconduct, among other reasons. Any such provisions, if any, would not excuse Verizon's abuses of discretion or otherwise preclude Plaintiffs and the Nationwide Class from recovering for breaches of the covenant of good faith and fair dealing.

160.    Plaintiffs and members of the Nationwide Class sustained damages as a result of Verizon's breaches of the covenant of good faith and fair dealing.

## COUNT III

### Consumer Fraud

**By All Plaintiffs on Behalf of the Nationwide Class**

161.    Plaintiffs repeat and incorporate by reference all preceding paragraphs as if fully set forth herein.

162.    Plaintiffs bring this claim on behalf of themselves and the Nationwide Class for violations of the following consumer fraud statutes:

      a.    the Alabama Deceptive Trade Practices Act, Ala. Code 1975, § 8–19–1, *et seq.*;

      b.    the Alaska Unfair Trade Practices and Consumer Protection Act, AS §

45.50.471, *et seq.*;

      c.    the Arizona Consumer Fraud Act, A.R.S §§ 44-1521, *et seq.*;

      d.    the Arkansas Deceptive Trade Practices Act, Ark. Code §§ 4-88-101, *et seq.*;

      e.    the Colorado Consumer Protection Act, C.R.S.A. §6-1-101, *et seq.*;

      f.    the Connecticut Unfair Trade Practices Act, C.G.S.A. § 42-110, *et seq.*;

      g.    the Delaware Consumer Fraud Act, 6 Del. C. § 2513, *et seq.*;

      h.    the D.C. Consumer Protection Procedures Act, DC Code § 28-3901, *et seq.*;

      i.    the Georgia Fair Business Practices Act, OCGA § 10-1-390, *et seq.*;

      j.    the Idaho Consumer Protection Act, I.C. § 48-601, *et seq.*;

      k.    the Illinois Consumer Fraud and Deceptive Business Practices Act, 815 ILCS 501/1, *et seq.*;

      l.    the Indiana Deceptive Consumer Sales Act, IN ST § 24-5-0.5-2, *et seq.*;

      m.    The Iowa Private Right of Action for Consumer Frauds Act, Iowa Code Ann. § 714H.1, *et seq.*;

      n.    the Kansas Consumer Protection Act, K.S.A. § 50-623, *et seq.*;

      o.    the Kentucky Consumer Protection Act, KRS 367.110, *et seq.*;

      p.    the Louisiana Unfair Trade Practices and Consumer Protection Law, LSA-R.S. 51:1401, *et seq.*;

      q.    the Maine Unfair Trade Practices Act, 5 M.R.S.A. § 205-A, *et seq.*;

      r.    the Maryland Consumer Protection Act, MD Code, Commercial Law, § 13-301, *et seq.*;

s.      the Massachusetts Regulation of Business Practices for Consumers

Protection Act, M.G.L.A. 93A, *et seq.*;

t.      the Michigan Consumer Protection Act, M.C.L.A. 445.901, *et seq.*;

u.      the Minnesota Prevention of Consumer Fraud Act, Minn. Stat. § 325F.68,

*et seq.*;

v.      the Mississippi Consumer Protection Act, Miss. Code Ann. § 75-24-1, *et*

*seq.*;

w.      the Missouri Merchandising Practices Act, V.A.M.S. § 407, *et seq.*;

x.      the Montana Unfair Trade Practices and Consumer Protection Act of

1973, Mont. Code Ann. § 30-14-101, *et seq.*;

y.      the Nebraska Consumer Protection Act, Neb. Rev. St. §§ 59-1601, *et seq.*;

z.      the Nevada Deceptive Trade Practices Act, N.R.S. 41.600, *et seq.*;

aa.     the New Hampshire Regulation of Business Practices for Consumer

Protection, N.H. Rev. Stat. § 358-A:1, *et seq.*;

bb.     the North Carolina Unfair and Deceptive Trade Practices Act, N.C. Gen

Stat. § 75-1.1, *et seq.*;

cc.     the North Dakota Consumer Fraud Act, N.D. Cent. Code Chapter 51-15, *et*

*seq.*;

dd.     the Ohio Consumer Sales Practices Act, R.C. 1345.01, *et seq.*;

ee.     the Oklahoma Consumer Protection Act, 15 O.S.2001, §§ 751, *et seq.*;

ff.     the Pennsylvania Unfair Trade Practices and Consumer Protection Law,

73 P.S. § 201-1, *et seq.*;

gg.     the Rhode Island Deceptive Trade Practices Act, G.L.1956 § 6-13.1-

5.2(B), *et seq.*;

hh.      the South Carolina Unfair Trade Practices Act, SC Code 1976, §§ 39-5-10, *et seq.*;

ii.      the South Dakota Deceptive Trade Practices and Consumer Protection Act, SDCL § 37-24-1, *et seq.*;

jj.      the Tennessee Consumer Protection Act, T.C.A. § 47-18-101, *et seq.*;

kk.      the Texas Deceptive Trade Practices-Consumer Protection Act, V.T.C.A., Bus. & C. § 17.41, *et seq.*;

ll.      the Utah Consumer Sales Practices Act, UT ST § 13-11-1, *et seq.*;

mm.      the Vermont Consumer Fraud Act, 9 V.S.A. § 2451, *et seq.*;

nn.      the Virginia Consumer Protection Act of 1977, VA ST § 59.1-196, *et seq.*;

oo.      the West Virginia Consumer Credit and Protection Act, W.Va. Code § 46A-1-101, *et seq.*;

pp.      the Wisconsin Deceptive Trade Practices Act, WIS. STAT. § 100.18, *et seq.*; and

qq.      the Wyoming Consumer Protection Act, WY ST § 40-12-101, *et seq.*

163.      By the acts and omissions alleged herein, Defendants have violated and continue to violate the above-cited consumer fraud statutes, causing damage to Plaintiffs and the members of the Nationwide Class.

164.      As a result of Defendants' violations, Plaintiffs and each Nationwide Class member have suffered damages and are therefore entitled to recover actual, statutory, and/or punitive damages, as well as attorneys' fees and costs.  Pursuant to these statutes, Plaintiffs and the Nationwide Class are also entitled to an injunction to halt Defendants' unlawful practices

described herein.

## COUNT IV

### Violation of Arizona Consumer Fraud Act, Ariz. Rev. Stat. §§ 44-1521, *et seq.*

### By Plaintiff Bonham on Behalf of the Arizona Sub-Class

165.    Plaintiff repeats and incorporates by reference all preceding paragraphs as if fully set forth herein.

166.    Plaintiff Bonham brings this claim on behalf of herself and the Arizona Sub-Class under the Arizona Consumer Fraud Act, Ariz. Rev. Stat. §§ 44-1521, *et seq.*

167.    Verizon's material misrepresentations, omissions, and failures to disclose described herein were unfair or deceptive trade practices in violation of the Arizona Consumer Fraud Act, Ariz. Rev. Stat. §§ 44-1521, *et seq.*

168.    Ariz. Rev. Stat. § 44-1522(A) provides:

> The act, use or employment by any person of any deception, deceptive or unfair act or practice, fraud, false pretense, false promise, misrepresentation, or concealment, suppression or omission of any material fact with intent that others rely on such concealment, suppression or omission, in connection with the sale or advertisement of any merchandise whether or not any person has in fact been misled, deceived or damaged thereby, is declared to be an unlawful practice.

169.    The Arizona Supreme Court has held that the Act creates an implied private right of action for damages, including punitive damages.  *See Sellinger v. Freeway Mobile Home Sales, Inc.*, 521 P.2d 1119, 1122 (1974)

170.    By the acts and omissions alleged herein, Defendants have violated and continue to violate Ariz. Rev. Stat. § 44-1522(A) and the Arizona Consumer Fraud Act, causing damage to Plaintiff Bonham and the Arizona Sub-Class.

171.    As a result of Defendants' violations, Plaintiff and each Arizona Sub-Class

member has suffered damages and is therefore entitled to recover actual, statutory, and/or punitive damages.  Pursuant to the statute, Plaintiff and the Arizona Sub-Class are also entitled to an injunction to halt Defendants' unlawful practices described herein.

**COUNT V**

**Violations of the Colorado Consumer Protection Act,
Colo. Rev. Stat. Ann. §§ 6-1-101, *et seq*.**

**By Plaintiff Gamblin on Behalf of the Colorado Sub-Class**

172.    Plaintiff repeats and incorporates by reference all preceding paragraphs as if fully set forth herein.

173.    Plaintiff Gamblin brings this claim on behalf of herself and the Colorado Sub-Class under the Colorado Consumer Protection Act, Colo. Rev. Stat. Ann. §§ 6-1-101, *et seq*.

174.    Verizon's material misrepresentations, omissions, and failures to disclose described herein were unfair or deceptive trade practices in violation of the Colorado Consumer Protection Act, Colo. Rev. Stat. Ann. §§ 6-1-101, *et seq*.

175.    Verizon engaged in specific deceptive trade practices declared unlawful by the Colorado Consumer Protection Act, including, *inter alia*:

a.    Verizon knowingly or recklessly represented that its wireless service plans had characteristics that they did not have (Colo. Rev. Stat. Ann. § 6-1-105(1)(e));

b.    Verizon advertised its wireless service plans with an intent not to sell them as advertised (Colo. Rev. Stat. Ann. § 6-1-105(1)(i));

c.    Verizon made false or misleading statements of fact concerning the prices of its wireless service plans (Colo. Rev. Stat. Ann. § 6-1-105(1)(l));

d.    Verizon failed to disclose material information concerning the prices of its wireless service plans which was known by Verizon at the time of sale, and which was intended

to induce the consumer to enter into a transaction (Colo. Rev. Stat. Ann. § 6-1-105(1)(u)); and

e.    Verizon knowingly or recklessly engaged in unfair, unconscionable, deceptive, deliberately misleading, false, or fraudulent acts or practices (Colo. Rev. Stat. Ann. § 6-1-105(1)(kkk)).

176.    The Act allows a person who has been injured as a result of a deceptive trade practice to recover actual damages or $500, whichever is greater. Colo. Rev. Stat. Ann. § 6-1-113(2)(a).  The Act also expressly allows treble damages, Colo. Rev. Stat. Ann. § 6-1-113(2)(a)(III), and provides for mandatory attorneys' fees in any successful action.  Colo. Rev. Stat. Ann. § 6-1-113(2)(b).

177.    By the acts and omissions alleged herein, Defendants have violated the Colorado Consumer Protection Act, Colo. Rev. Stat. Ann. §§ 6-1-101, *et seq*., causing damage to Plaintiff Gamblin and the members of the Colorado Sub-Class.

178.    As a result of Defendants' violations, Plaintiff Gamblin and each member of the Colorado Sub-Class have suffered damages and are therefore entitled to recover damages or $500 per person (whichever is greater).  Plaintiff Gamblin and each member of the Colorado Sub-Class are also entitled to treble damages and attorneys' fees and costs.  Plaintiff Gamblin and the members of the Colorado Sub-Class are also entitled to an injunction to halt Defendants' unlawful practices.

## COUNT VI

### Violation of the Georgia Fair Business Practices Act, Ga. Code §§ 10-1-390, *et seq.*

### By Plaintiff Dyer on Behalf of the Georgia Sub-Class

179.    Plaintiff repeats and incorporates by reference all preceding paragraphs as if fully set forth herein.

180.    Plaintiff Dyer brings this claim on behalf of herself and the Georgia Sub-Class under the Georgia Fair Business Practices Act, Ga. Code §§ 10-1- 390, *et seq.*

181.    Verizon's material misrepresentations, omissions, and failures to disclose described herein were unfair or deceptive practices in violation of the Georgia Fair Business Practices Act, Ga. Code §§ 10-1- 390, *et seq.*

182.    Verizon engaged in specific unfair or deceptive acts or practices declared unlawful by the Georgia Fair Business Practices Act, including, *inter alia*:

a.    Verizon represented that its wireless service plans had characteristics that they did not have (Ga. Code § 10-1-393(b)(5)); and

b.    Verizon advertised its wireless service plans with an intent not to sell them as advertised (Ga. Code § 10-1-393(b)(9)).

183.    The Georgia Fair Business Practices Act allows any person who has suffered "injury or damages" as a result of a violation of the Act to bring an action to seek injunctive relief and to recover his or her general and exemplary damages.  Ga. Code § 10-1-399(a).  The Act also expressly allows treble damages.  Ga. Code § 10-1-399(c).

184.    Plaintiff Dyer has provided notice on behalf of herself and the Georgia Sub-Class as required by Ga. Code § 10-1-399(b) in a letter to Verizon dated May 27, 2022. Verizon did not respond to the notice.

185.    By the acts and omissions alleged herein, Defendants have violated the Georgia Fair Business Practices Act, Ga. Code §§ 10-1- 390, *et seq.*, causing damage to Plaintiff Dyer and the members of the Georgia Sub-Class.

186.    As a result of Defendants' violations, Plaintiff Dyer and each Georgia Sub-Class member has suffered damages and is therefore entitled to recover actual, statutory, treble and/or

punitive damages, as well as attorneys' fees and costs. Pursuant to the statute, Plaintiff Dyer and the Georgia Sub-Class are also entitled to an injunction to halt Defendants' unlawful practices described herein.

## COUNT VII

### Violation of the Illinois Consumer Fraud and Deceptive Business Practices Act, 815 Ill. Comp. Stat. Ann. 505/1, *et seq.*, and the Illinois Uniform Deceptive Trade Practices Act, 815 Ill. Comp. Stat. Ann. 510/1, *et seq.*

**By Plaintiffs Dylan Corbin, Ryan Corbin, Pachecho and Taylor on Behalf of the Illinois Sub-Class**

187.    Plaintiffs repeat and incorporate by reference all preceding paragraphs as if fully set forth herein.

188.    Plaintiffs Dylan Corbin, Ryan Corbin, Pachecho and Taylor bring this claim on behalf of themselves and the Illinois Sub-Class under the Illinois Consumer Fraud and Deceptive Business Practices Act, 815 Ill. Comp. Stat. Ann. 505/1, *et seq.*, and the Illinois Uniform Deceptive Trade Practices Act, 815 Ill. Comp. Stat. Ann. 510/1, *et seq.*

189.    Verizon's material misrepresentations, omissions, and failures to disclose described herein were deceptive acts or practices in violation of section 505/2 of the Illinois Consumer Fraud and Deceptive Business Practices Act, which provides:

> Unfair methods of competition and unfair or deceptive acts or practices, including but not limited to the use or employment of any deception, fraud, false pretense, false promise, misrepresentation or the concealment, suppression or omission of any material fact, with intent that others rely upon the concealment, suppression or omission of such material fact, or the use or employment of any practice described in Section 2 of the "Uniform Deceptive Trade Practices Act", approved August 5, 1965, in the conduct of any trade or commerce are hereby declared unlawful whether any person has in fact been misled, deceived or damaged thereby.

190.    Additionally, Verizon engaged in specific deceptive trade practices declared unlawful by the Illinois Uniform Deceptive Trade Practices Act, including, *inter alia*:

a.      Verizon represented that its wireless service plans had characteristics that they did not have (815 Ill. Comp. Stat. Ann. 510/2(a)(5));

b.      Verizon advertised its wireless service plans with an intent not to sell them as advertised (815 Ill. Comp. Stat. Ann. 510/2(a)(9)); and

c.      Verizon engaged in conduct that created a likelihood of confusion or of misunderstanding (815 Ill. Comp. Stat. Ann. 510/2(a)(12)).

191.    The Illinois Consumer Fraud and Deceptive Business Practices Act allows any person who has suffered actual damage as a result of a violation of the Act to bring an action to recover actual damages. 815 Ill. Comp. Stat. Ann. 505/10a(a). A person may also obtain an injunction to permanently enjoin the unlawful trade practices. 815 Ill. Comp. Stat. Ann. 510/3.

192.    By the acts and omissions alleged herein, Defendants have violated Illinois Consumer Fraud and Deceptive Business Practices Act, 815 Ill. Comp. Stat. Ann. 505/1, *et seq.*, and the Illinois Uniform Deceptive Trade Practices Act, 815 Ill. Comp. Stat. Ann. 510/1, *et seq.*, causing damage to Plaintiffs Dylan Corbin, Ryan Corbin, Pachecho and Taylor and the members of the Illinois Sub-Class.

193.    As a result of Defendants' violations, Plaintiffs Dylan Corbin, Ryan Corbin, Pachecho and Taylor and each Illinois Sub-Class member has suffered damages and is therefore entitled to recover actual, statutory, treble and/or punitive damages, as well as attorneys' fees and costs.  Pursuant to the statute, Plaintiffs Dylan Corbin, Ryan Corbin, Pachecho and Taylor and the Illinois Sub-Class are also entitled to an injunction to halt Defendants' unlawful practices described herein.

## COUNT VIII

### Violation of the Indiana Deceptive Consumer Sales Act,
### Ind. Code Ann. §§ 24-5-0.5-1, *et seq.*

### By Plaintiffs Baker and Conover on Behalf of the Indiana Sub-Class

194.    Plaintiffs repeat and incorporate by reference all preceding paragraphs as if fully set forth herein.

195.    Plaintiffs Baker and Conover bring this claim on behalf of themselves and the Indiana Sub-Class under the Indiana Deceptive Consumer Sales Act, Ind. Code Ann. §§ 24-5-0.5-1, *et seq.*

196.    Verizon's material misrepresentations, omissions, and failures to disclose described herein were unfair, abusive, or deceptive acts or practices in violation of the Indiana Deceptive Consumer Sales Act, Ind. Code Ann. §§ 24-5-0.5-1, *et seq.*

197.    Section 24-5-0.5-3(a) of the Indiana Deceptive Consumer Sales Act states that a "supplier may not commit an unfair, abusive, or deceptive act, omission, or practice in connection with a consumer transaction."

198.    The Act allows a person who has relied upon an uncured or incurable deceptive act to "bring an action for the damages actually suffered as a consumer as a result of the deceptive act or five hundred dollars ($500), whichever is greater." Ind. Code Ann. § 24-5-0.5-4(a).

199.    The Act also expressly allows treble damages.  Ind. Code Ann. § 24-5-0.5-4(a). And, where the person is an elder (age 60 or older), treble damages are permitted as a matter of right.  Ind. Code Ann. § 24-5-0.5-4(i).

200.    Plaintiffs Baker and Conover have provided notice as required by Ind. Code Ann. § 24-5-0.5-5 in a letter to Verizon dated May 27, 2022.  Verizon did not respond to the notice.

Nevertheless, Plaintiffs specifically allege that notice is not required because Defendants' conduct constitutes "incurable deceptive acts," in that they were done by a supplier as part of a scheme, artifice, or device with intent to defraud or mislead. Ind. Code Ann. § 24-5-0.5-2(8).

201. By the acts and omissions alleged herein, Defendants have violated the Indiana Deceptive Consumer Sales Act, Ind. Code Ann. §§ 24-5-0.5-1, *et seq.*, causing damage to Plaintiffs Baker and Conover and the members of the Indiana Sub-Class.

202. As a result of Defendants' violations, Plaintiffs Baker and Conover and each member of the Indiana Sub-Class have suffered damages and are therefore entitled to recover damages or $500 per person (whichever is greater). Plaintiffs Baker and Conover and each member of the Indiana Sub-Class are also entitled to treble damages and attorneys' fees and costs. Plaintiffs Baker and Conover and the members of the Indiana Sub-Class are also entitled to an injunction to halt Defendants' unlawful practices.

## COUNT IX

### <u>Violation of the Maryland Unfair or Deceptive Trade Practices Act,<br>Md. Code Ann., Com. Law §§ 13-301, *et seq.*</u>

### By Plaintiff Ocampo-Neubauer on Behalf of the Maryland Sub-Class

203. Plaintiff repeats and incorporates by reference all preceding paragraphs as if fully set forth herein.

204. Plaintiff Ocampo-Neubauer brings this claim on behalf of herself and the Maryland Sub-Class under the Maryland Unfair or Deceptive Trade Practices Act, Md. Code Ann., Com. Law §§ 13-301, *et seq.*

205. Verizon's material misrepresentations, omissions, and failures to disclose described herein were unfair, abusive, or deceptive trade practices in violation of the Maryland Unfair or Deceptive Trade Practices Act, Md. Code Ann., Com. Law §§ 13-301, *et seq.*

206.    Verizon engaged in specific unfair, abusive, or deceptive trade practices declared unlawful by the Maryland Unfair or Deceptive Trade Practices Act, including, *inter alia*:

a.    Verizon represented that its wireless service plans had characteristics that they did not have (Md. Code Ann., Com. Law § 13-301(2)(i));

b.    Verizon failed to state material facts concerning the prices of its wireless service plans, which deceived or had a tendency to deceive (Md. Code Ann., Com. Law § 13-301(3);

c.    Verizon advertised its wireless service plans with an intent not to sell them as advertised (Md. Code Ann., Com. Law § 13-301(5)(i)); and

d.    Verizon used or employed deception, fraud, misrepresentation, or knowingly concealed, suppressed, or omitted material facts with intent that a consumer rely on the same in connection with the promotion or sale of its wireless service plans (Md. Code Ann., Com. Law § 13-301(9)(i)).

207.    The Act allows a person to bring an action to recover damages for any injury or loss sustained as a result of a prohibited practice. Md. Code Ann., Com. Law § 13-408(a).

208.    By the acts and omissions alleged herein, Defendants have violated the Maryland Unfair or Deceptive Trade Practices Act, Md. Code Ann., Com. Law §§ 13-301, *et seq*., causing damage to Plaintiff Ocampo-Neubauer and the members of the Maryland Sub-Class.

209.    As a result of Defendants' violations, Plaintiff Ocampo-Neubauer and each Maryland Sub-Class member has suffered damages and is therefore entitled to recover actual, statutory, treble and/or punitive damages, as well as attorneys' fees and costs.  Pursuant to the statute, Plaintiff Ocampo-Neubauer and the Maryland Sub-Class are also entitled to an injunction to halt Defendants' unlawful practices described herein.

## COUNT X

### Violation of the Massachusetts Unfair and Deceptive Business Practices Act, Mass. Gen. Laws, Ch. 93A, §§ 1, *et seq*.

### By Plaintiffs Keller and Lombard on Behalf of the Massachusetts Sub-Class

210.    Plaintiffs repeat and incorporate by reference all preceding paragraphs as if fully set forth herein.

211.    Plaintiffs Keller and Lombard bring this claim on behalf of themselves and the Massachusetts Sub-Class under the Massachusetts Unfair and Deceptive Business Practices Act, Mass. Gen. Laws, Ch. 93A, §§ 1, *et seq*.

212.    Verizon's material misrepresentations, omissions, and failures to disclose described herein were unfair, abusive, or deceptive trade practices in violation of the Massachusetts Unfair and Deceptive Business Practices Act, Mass. Gen. Laws, Ch. 93A, §§ 1, *et seq*.

213.    The Act prohibits the use of "unfair or deceptive acts or practices in the conduct of any trade or commerce."  Mass. Gen. Laws, Ch. 93A, § 2.

214.    The Act allows a person "who has been injured by another person's use or employment of any method, act or practice declared to be unlawful" to bring an action for damages and equitable relief, including injunctive relief. Mass. Gen. Laws, Ch. 93A, § 9(1).

215.    The Act also expressly allows treble damages. Mass. Gen. Laws, Ch. 93A, § 9(3). The Act also provides mandatory attorneys' fees to a plaintiff in any successful action. Mass. Gen. Laws Ann. ch. 93A, § 9(4).

216.    Plaintiffs Keller and Lombard have provided notice to the extent required by the Act in a letter to Verizon dated May 27, 2022. Verizon did not respond to the notice.

217.    By the acts and omissions alleged herein, Defendants have violated the

Massachusetts Unfair and Deceptive Business Practices Act, Mass. Gen. Laws, Ch. 93A, §§ 1, *et seq.*, causing damage to Plaintiffs Keller and Lombard and the members of the Massachusetts Sub-Class.

218.    As a result of Defendants' violations, Plaintiffs Keller and Lombard and each Massachusetts Sub-Class member has suffered damages and is therefore entitled to recover actual, statutory, treble and/or punitive damages, as well as attorneys' fees and costs.  Pursuant to the statute, Plaintiffs Keller and Lombard and the Massachusetts Sub-Class are also entitled to an injunction to halt Defendants' unlawful practices described herein.

### COUNT XI

#### Violation of the Michigan Consumer Protection Act, Mich. Comp. Laws Ann. §§ 445.901, *et seq*.

**By Plaintiffs Blair, Conley, and Gardner on Behalf of the Michigan Sub-Class**

219.    Plaintiffs repeat and incorporate by reference all preceding paragraphs as if fully set forth herein.

220.    Plaintiffs Blair, Conley, and Gardner bring this claim on behalf of themselves and the Michigan Sub-Class under the Michigan Consumer Protection Act, Mich. Comp. Laws Ann. §§ 445.901, *et seq*.

221.    Verizon's material misrepresentations, omissions, and failures to disclose described herein were unfair, unconscionable, or deceptive acts or practices in violation of the Michigan Consumer Protection Act, Mich. Comp. Laws Ann. §§ 445.901, *et seq*.

222.    Verizon engaged in specific unfair, unconscionable, or deceptive acts or practices declared unlawful by the Michigan Consumer Protection Act, including, *inter alia*:

a.    Verizon represented that its wireless service plans had characteristics that they did not have (Mich. Comp. Laws Ann. § 445.903(1)(c));

63

b.     Verizon advertised its wireless service plans with an intent not to sell them as advertised (Mich. Comp. Laws Ann. § 445.903(1)(g));

c.     Verizon failed to reveal material facts concerning the prices of its wireless service plans, which had a tendency to mislead or deceive (Mich. Comp. Laws Ann. § 445.903(1)(s));

d.     Verizon made representations of fact or statements of fact material to the selling of its wireless service plans such that a person would reasonably believe the represented or suggested state of affairs was something other than it actually was (Mich. Comp. Laws Ann. § 445.903(1)(bb)); and

e.     Verizon failed to reveal facts that were material to the selling of its wireless service plans in light of representations of fact made in a positive manner (Mich. Comp. Laws Ann. § 445.903(1)(cc)).

223.    The Act allows a person who has suffered a loss as a result of a violation of the Act to recover actual damages or $250, whichever is greater. Mich. Comp. Laws Ann. § 445.911(2).

224.    The Act also allows a person to obtain a declaratory judgment that an act or practice is unlawful under the Act, and to obtain injunctive relief to permanently enjoin the unlawful act or practice. Mich. Comp. Laws Ann. § 445.911(1).

225.    By the acts and omissions alleged herein, Defendants have violated the Michigan Consumer Protection Act, Mich. Comp. Laws Ann. §§ 445.901, *et seq*., causing damage to Plaintiffs Blair, Conley, and Gardner and the members of the Michigan Sub-Class.

226.    As a result of Defendants' violations, Plaintiffs Blair, Conley, and Gardner and each member of the Michigan Sub-Class have suffered damages and are therefore entitled to

recover damages or $250 per person (whichever is greater).  Plaintiffs Blair, Conley, and

Gardner and each member of the Michigan Sub-Class are also entitled to treble and/or punitive

damages and attorneys' fees and costs.  Plaintiffs Blair, Conley, and Gardner and the members of

the Michigan Sub-Class are also entitled to declaratory and injunctive relief to halt Defendants'

unlawful practices.

## COUNT XII

### Violation of the Minnesota False Statement in Advertisement Act,<br>Minn. Stat. Ann. § 325F.67, and the Minnesota Prevention of Consumer Fraud Act,<br>Minn. Stat. Ann. § 325F.69

### By Plaintiff Kirby on Behalf of the Minnesota Sub-Class

227.    Plaintiff repeats and incorporates by reference all preceding paragraphs as if fully

set forth herein.

228.    Plaintiff Kirby brings this claim on behalf of herself and the Minnesota Sub-Class

under the Minnesota False Statement in Advertisement Act, Minn. Stat. Ann. § 325F.67, and the

Minnesota Prevention of Consumer Fraud Act, Minn. Stat. Ann. § 325F.69.

229.    Verizon's material misrepresentations, omissions, and failures to disclose

described herein were unfair, unconscionable, or deceptive acts or practices in violation of the

Minnesota Sub-Class under the Minnesota False Statement in Advertisement Act, Minn. Stat.

Ann. § 325F.67, and the Minnesota Prevention of Consumer Fraud Act, Minn. Stat. Ann. §

325F.69.

230.    The Minnesota False Statement in Advertisement Act prohibits the making of any

advertisement that contains any material assertion, representation, or statement of fact which is

untrue, deceptive, or misleading.  Minn. Stat. Ann. § 325F.67.

231.    The Minnesota Prevention of Consumer Fraud Act prohibits the use of any

"fraud, false pretense, false promise, misrepresentation, misleading statement or deceptive practice, with the intent that others rely thereon in connection with the sale of any merchandise, whether or not any person has in fact been misled, deceived, or damaged." Minn. Stat. Ann. § 325F.69.

232.    A person who has been injured by a violation of either act may bring an action to recover damages and any other equitable relief. Minn. Stat. Ann. § 8.31(3a).

233.    By the acts and omissions alleged herein, Defendants have violated the Minnesota False Statement in Advertisement Act, Minn. Stat. Ann. § 325F.67, and the Minnesota Prevention of Consumer Fraud Act, Minn. Stat. Ann. § 325F.69, causing damage to Plaintiff Kirby and the members of the Minnesota Sub-Class.

234.    As a result of Defendants' violations, Plaintiff Kirby and each Minnesota Sub-Class member has suffered damages and is therefore entitled to recover actual, statutory, treble and/or punitive damages, as well as attorneys' fees and costs.  Pursuant to the statute, Plaintiff Kirby and the Minnesota Sub-Class are also entitled to an injunction to halt Defendants' unlawful practices described herein.

## COUNT XIII

### Violation of the North Carolina Monopolies, Trusts, and Consumer Protection Act, N.C. Gen. Stat. §§ 75-1, *et seq*.

**By Plaintiffs Allen, Burke, and Hensley on Behalf of the North Carolina Sub-Class**

235.    Plaintiffs repeat and incorporate by reference all preceding paragraphs as if fully set forth herein.

236.    Plaintiffs Allen, Burke, and Hensley bring this claim on behalf of themselves and the North Carolina Sub-Class under the North Carolina Monopolies, Trusts, and Consumer Protection Act, N.C. Gen. Stat. §§ 75-1, *et seq*.

237.     Verizon's material misrepresentations, omissions, and failures to disclose described herein were unfair, unconscionable, or deceptive acts or practices in violation of the North Carolina Monopolies, Trusts, and Consumer Protection Act, N.C. Gen. Stat. §§ 75-1, *et seq*.

238.     The Act declares unlawful "[u]nfair methods of competition in or affecting commerce, and unfair or deceptive acts or practices in or affecting commerce." N.C. Gen. Stat. § 75-1.1(a).

239.     The Act allows a person who has been injured by an act or practice declared unlawful to bring an action to recover mandatory treble damages. N.C. Gen. Stat. § 75-16.

240.     By the acts and omissions alleged herein, Defendants have violated the North Carolina Monopolies, Trusts, and Consumer Protection Act, N.C. Gen. Stat. §§ 75-1, *et seq*., causing damage to Plaintiffs Allen, Burke, and Hensley and the members of the North Carolina Sub-Class.

241.     As a result of Defendants' violations, Plaintiffs Allen, Burke, and Hensley and each North Carolina Sub-Class member has suffered damages and is therefore entitled to recover actual, statutory, treble and/or punitive damages, as well as attorneys' fees and costs.  Pursuant to the statute, Plaintiffs Allen, Burke, and Hensley and the North Carolina Sub-Class are also entitled to an injunction to halt Defendants' unlawful practices described herein.

## COUNT XIV

### Violation of the Ohio Unfair, Deceptive, or Unconscionable Acts or Practices Act, Ohio Rev. Code §§ 1345.01, *et seq*.

**By Plaintiffs Cavallaro, Curry, and Snyder on Behalf of the Ohio Sub-Class**

242.     Plaintiffs repeat and incorporate by reference all preceding paragraphs as if fully set forth herein.

243.    Plaintiffs Cavallaro, Curry, and Snyder bring this claim on behalf of themselves and the Ohio Sub-Class under the Ohio Unfair, Deceptive, or Unconscionable Acts or Practices Act, Ohio Rev. Code §§ 1345.01, *et seq*.

244.    Verizon's material misrepresentations, omissions, and failures to disclose described herein were unfair or deceptive acts or practices in violation of the Ohio Unfair, Deceptive, or Unconscionable Acts or Practices Act, Ohio Rev. Code §§ 1345.01, *et seq*.

245.    Verizon engaged in specific unfair or deceptive trade practices declared unlawful by the Ohio Unfair, Deceptive, or Unconscionable Acts or Practices Act, including, *inter alia*:

a.    Verizon made representations that its wireless service plans had characteristics that they did not have (Ohio Rev. Code § 1345.02(B)(1)); and

b.    Verizon did not provide its wireless service plans in accordance with previous representations it made (Ohio Rev. Code § 1345.02(B)(5)).

246.    Where there is a violation of the Act, a person is allowed to bring an action to recover "actual economic damages plus an amount not exceeding five thousand dollars in noneconomic damages." Ohio Rev. Code § 1345.09(A). "Actual economic damages" includes all damages for "direct, incidental, or consequential pecuniary losses" resulting from a violation of the Act. Ohio Rev. Code § 1345.09(G).

247.    A person may also seek all other appropriate relief, including declaratory and injunctive relief. Ohio Rev. Code § 1345.09(D).

248.    By the acts and omissions alleged herein, Defendants have violated the Ohio Unfair, Deceptive, or Unconscionable Acts or Practices Act, Ohio Rev. Code §§ 1345.01, *et seq*., causing damage to Plaintiffs Cavallaro, Curry, and Snyder and the members of the Ohio Sub-Class.

249.    As a result of Defendants' violations, Plaintiffs Cavallaro, Curry, and Snyder and each Ohio Sub-Class member has suffered damages and is therefore entitled to recover actual, statutory, treble and/or punitive damages, as well as attorneys' fees and costs.  Pursuant to the statute, Plaintiffs Cavallaro, Curry, and Snyder and the Ohio Sub-Class are also entitled to an injunction to halt Defendants' unlawful practices described herein.

## COUNT XV

### Violation of the Pennsylvania Unfair Trade Practices and Consumer Protection Law, 73 Pa. Stat. Ann. §§ 201-1, *et seq*.

#### By Plaintiffs Vallecorsa and Young on Behalf of the Pennsylvania Sub-Class

250.    Plaintiffs repeat and incorporate by reference all preceding paragraphs as if fully set forth herein.

251.    Plaintiffs Vallecorsa and Young bring this claim on behalf of themselves and the Pennsylvania Sub-Class under the Pennsylvania Unfair Trade Practices and Consumer Protection Law, 73 Pa. Stat. Ann. §§ 201-1, *et seq*.

252.    Verizon's material misrepresentations, omissions, and failures to disclose described herein were unfair or deceptive acts or practices in violation of the Pennsylvania Unfair Trade Practices and Consumer Protection Law, 73 Pa. Stat. Ann. §§ 201-1, *et seq*.

253.    Verizon engaged in specific unfair or deceptive acts or practices declared unlawful by the Pennsylvania Unfair Trade Practices and Consumer Protection Law, including, *inter alia*:

    a.    Verizon represented that its wireless service plans had characteristics that they did not have (73 Pa. Stat. Ann. § 201-2(4)(v));

    b.    Verizon advertised its wireless service plans with an intent not to sell them as advertised (73 Pa. Stat. Ann. § 201-2(4)(ix)); and

c.      Verizon engaged in fraudulent or deceptive conduct which created a likelihood of confusion or of misunderstanding (73 Pa. Stat. Ann. § 201-2(4)(xxi)).

254.    The Act allows a person who "suffers any ascertainable loss of money or property, real or personal, as a result of the use or employment by any person of a method, act or practice declared unlawful" to bring an action to recover actual damages or $100, whichever is greater, as well as any other equitable relief. 73 Pa. Stat. Ann. § 201-9.2(a).

255.    The Act also expressly allows treble damages. 73 Pa. Stat. Ann. § 201-9.2(a).

256.    Plaintiffs Vallecorsa and Young and each member of the Pennsylvania Sub-Class reasonably relied on Defendants' material misrepresentations, false advertisements, and deceptive policies and practices, and would not have purchased services and/or equipment from Defendants, or would have acted differently, had they known the truth about Defendants' policies and practices.

257.    By the acts and omissions alleged herein, Defendants have violated the Pennsylvania Unfair Trade Practices and Consumer Protection Law, 73 Pa. Stat. Ann. §§ 201-1, *et seq*., causing damage to Plaintiffs Vallecorsa and Young and the members of the Pennsylvania Sub-Class.

258.    As a result of Defendants' violations, Plaintiffs Vallecorsa and Young and each member of the Pennsylvania Sub-Class have suffered damages and are therefore entitled to recover damages or $100 per person (whichever is greater).  Plaintiffs Vallecorsa and Young and each member of the Pennsylvania Sub-Class are also entitled to treble and/or punitive damages and attorneys' fees and costs.  Plaintiffs Vallecorsa and Young and the members of the Pennsylvania Sub-Class are also entitled to declaratory and injunctive relief to halt Defendants' unlawful practices.

## COUNT XVI

### Violation of the Texas Deceptive Trade Practices-Consumer Protection Act, Tex. Bus. & Com. Code §§ 17.41, *et seq.*

### By Plaintiff Bell on Behalf of the Texas Sub-Class

259.    Plaintiff repeats and incorporates by reference all preceding paragraphs as if fully set forth herein.

260.    Plaintiff Bell brings this claim on behalf of herself and the Texas Sub-Class under the Texas Deceptive Trade Practices-Consumer Protection Act, Tex. Bus. & Com. Code §§ 17.41, *et seq.*

261.    Verizon's material misrepresentations, omissions, and failures to disclose described herein were false, misleading, or deceptive acts or practices in violation of the Texas Deceptive Trade Practices-Consumer Protection Act, Tex. Bus. & Com. Code §§ 17.41, *et seq.*

262.    Verizon violated specific provisions of the Texas Deceptive Trade Practices-Consumer Protection Act, including, *inter alia*:

a.      Verizon represented that its wireless service plans had characteristics that they did not have (Tex. Bus. & Com. Code § 17.46(b)(5));

b.      Verizon advertised its wireless service plans with an intent not to sell them as advertised (Tex. Bus. & Com. Code § 17.46(b)(9));

c.      Verizon failed to disclose information concerning its wireless service plans which was known at the time of transaction with the intent to induce the consumer into a transaction into which the consumer would not have entered had the information been disclosed (Tex. Bus. & Com. Code § 17.46(b)(24)); and

d.      Verizon committed unconscionable actions or an unconscionable course of actions (Tex. Bus. & Com. Code § 17.50(a)(3)).

71

263.    The Act allows a person who has suffered economic damages as a result of an unlawful act to recover economic damages. Tex. Bus. & Com. Code § 17.50(a), (b)(1). The Act also allows a person to obtain any other equitable relief necessary to restore to the person any money or property which may have been acquired by the unlawful acts. Tex. Bus. & Com. Code § 17.50(b)(3).

264.    The Act further allows a person to obtain an order enjoining the unlawful acts. Tex. Bus. & Com. Code § 17.50(b)(2).

265.    The Act also expressly allows treble damages. Tex. Bus. & Com. Code § 17.50(b)(1). The Act also provides mandatory attorneys' fees to a prevailing consumer. Tex. Bus. & Com. Code § 17.50(d).

266.    Plaintiff Bells has provided notice on behalf of herself and the Texas Sub-Class to the extent required by the Act in a letter to Verizon dated May 27, 2022. Verizon did not respond to the notice.

267.    By the acts and omissions alleged herein, Defendants have violated the Texas Deceptive Trade Practices-Consumer Protection Act, Tex. Bus. & Com. Code §§ 17.41, *et seq.*, causing damage to Plaintiff Bell and the members of the Texas Sub-Class.

268.    As a result of Defendants' violations, Plaintiff Bell and each Texas Sub-Class member has suffered damages and is therefore entitled to recover actual, statutory, treble and/or punitive damages, as well as attorneys' fees and costs.  Pursuant to the statute, Plaintiff Bell and the Texas Sub-Class are also entitled to an injunction to halt Defendants' unlawful practices described herein.

## COUNT XVII

### Violation of the Virginia Consumer Protection Act, Va. Code Ann. §§ 59.1-196, *et seq.*

### By Plaintiffs Maxa and Moran on Behalf of the Virginia Sub-Class

269.     Plaintiffs repeat and incorporate by reference all preceding paragraphs as if fully set forth herein.

270.     Plaintiffs Maxa and Moran bring this claim on behalf of themselves and the Virginia Sub-Class under the Virginia Consumer Protection Act, Va. Code Ann. §§ 59.1-196, *et seq*.

271.     Verizon's material misrepresentations, omissions, and failures to disclose described herein were fraudulent acts or practices in violation of the Virginia Consumer Protection Act, Va. Code Ann. §§ 59.1-196, *et seq*.

272.     Verizon engaged in specific fraudulent acts or practices declared unlawful by the Virginia Consumer Protection Act, including, *inter alia*:

a.     Verizon represented that its wireless service plans had characteristics that they did not have (Va. Code Ann. § 59.1-200(A)(5));

b.     Verizon advertised its wireless service plans with an intent not to sell them as advertised or with an intent not to sell at the price or upon the terms advertised (Va. Code Ann. § 59.1-200(A)(8)); and

c.     Verizon used deception, fraud, false pretense, false promises, or misrepresentations in connection with consumer transactions (Va. Code Ann. § 59.1-200(A)(14)).

273.     The Act allows any person who "suffers loss as the result of a violation of this chapter" to bring "an action to recover actual damages, or $500, whichever is greater." Va. Code

Ann. § 59.1-204(A).

274.    The Act also authorizes injunctive relief to permanently enjoin the unlawful act or practice. *See* Va. Code Ann. §§ 59.1-203, 59.1-205.

275.    The Act also expressly allows for the increase of damages "to an amount not exceeding three times the actual damages sustained, or $1,000, whichever is greater." Va. Code Ann. § 59.1-204(A).

276.    Plaintiffs Maxa and Moran have provided notice to the extent required by the Act in a letter to Verizon dated May 27, 2022. Verizon did not respond to the notice.

277.    By the acts and omissions alleged herein, Defendants have violated the Virginia Consumer Protection Act, Va. Code Ann. §§ 59.1-196, *et seq.*, causing damage to Plaintiffs Maxa and Moran and the members of the Virginia Sub-Class.

278.    As a result of Defendants' violations, Plaintiffs Maxa and Moran and each member of the Virginia Sub-Class have suffered damages and are therefore entitled to recover damages or $500 per person (whichever is greater).  Plaintiffs Maxa and Moran and each member of the Virginia Sub-Class are also entitled to treble and/or punitive damages and attorneys' fees and costs.  Plaintiffs Maxa and Moran and the members of the Virginia Sub-Class are also entitled to declaratory and injunctive relief to halt Defendants' unlawful practices.

## COUNT XVIII

### Violation of the Wisconsin Deceptive Trade Practices Act, Wis. Stat. Ann. § 100.18, *et seq.*

### By Plaintiff From on Behalf of the Wisconsin Sub-Class

279.    Plaintiff repeats and incorporates by reference all preceding paragraphs as if fully set forth herein.

280.    Plaintiff From brings this claim on behalf of himself and the Wisconsin Sub-Class

under the Wisconsin Deceptive Trade Practices Act, Wis. Stat. Ann. § 100.18, *et seq.*

281.    Verizon's material misrepresentations, omissions, and failures to disclose described herein violated the Wisconsin Deceptive Trade Practices Act, Wis. Stat. Ann. § 100.18(1), which provides:

> No person, firm, corporation or association, or agent or employee thereof, with intent to sell, distribute, increase the consumption of or in any wise dispose of any real estate, merchandise, securities, employment, service, or anything offered by such person, firm, corporation or association, or agent or employee thereof, directly or indirectly, to the public for sale, hire, use or other distribution, or with intent to induce the public in any manner to enter into any contract or obligation relating to the purchase, sale, hire, use or lease of any real estate, merchandise, securities, employment or service, shall make, publish, disseminate, circulate, or place before the public, or cause, directly or indirectly, to be made, published, disseminated, circulated, or placed before the public, in this state, in a newspaper, magazine or other publication, or in the form of a book, notice, handbill, poster, bill, circular, pamphlet, letter, sign, placard, card, label, or over any radio or television station, or in any other way similar or dissimilar to the foregoing, an advertisement, announcement, statement or representation of any kind to the public relating to such purchase, sale, hire, use or lease of such real estate, merchandise, securities, service or employment or to the terms or conditions thereof, which advertisement, announcement, statement or representation contains any assertion, representation or statement of fact which is untrue, deceptive or misleading.

282.    Section 100.18 allows any person who has suffered pecuniary loss because of a violation of the section to bring an action and "shall recover such pecuniary loss, together with costs, including reasonable attorney fees." Wis. Stat. Ann. § 100.18(11)(b)(2).

283.    Additionally, Verizon's material misrepresentations, omissions, and failures to disclose violated Wis. Stat. Ann. § 100.207(2), which provides:

> A person may not make in any manner any statement or representation with regard to the provision of telecommunications service, including the rates, terms or conditions for telecommunications service, which is false, misleading or deceptive, or which omits to state material information with respect to the provision of telecommunications service that is necessary to make the statement not false, misleading or deceptive.

284.    Section 100.207 allows any person who has been "adversely affected" by another

person's failure to comply with the section to bring "a claim for appropriate relief, including damages, injunctive or declaratory relief, specific performance and rescission." Wis. Stat. Ann. § 100.207(6)(a)(1). Additionally, a violation of section 100.207 constitutes fraudulent representations in violation of section 100.18(1). Wis. Stat. Ann. § 100.207(6)(f).

285.    By the acts and omissions alleged herein, Defendants have violated the Wisconsin Deceptive Trade Practices Act, Wis. Stat. Ann. § 100.18, *et seq*., causing damage to Plaintiff From and the members of the Wisconsin Sub-Class.

286.    As a result of Defendants' violations, Plaintiff From and each Wisconsin Sub-Class member has suffered damages and is therefore entitled to recover actual, statutory, treble and/or punitive damages, as well as attorneys' fees and costs.  Pursuant to the statute, Plaintiff From and the Wisconsin Sub-Class are also entitled to an injunction to halt Defendants' unlawful practices described herein.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs Pamela M. Allen, Lisa Baker, Briana Bell, Kimberly Blair, Caroline Bonham, Tammy Burke, Shauna Cavallaro, Erika Conley, Kendra Conover, Dylan Corbin, Ryan Corbin, Laura Curry, Shakera Dyer, Russell From, Ashtin Gamblin, Ericka Gardner, James Hensley, Adam Keller, Krista Kirby, Jan Lombard, Aaron Maxa, Lindsey Moran, Jennifer Ocampo-Neubauer, Angel Pachecho, Lori Snyder, Kathryn Taylor, Anthony Vallecorsa, and Brad Young, ask this Court to:

A.    Certify the case as a class action and appoint Plaintiffs and their counsel to represent the Class and Sub-Classes;

B.    Declare that Defendants are financially responsible for notifying all Class and Sub-Class members of Defendants' deceptive and unconscionable business practices alleged

herein;

      C.      Declare that Defendants' conduct alleged herein violates the laws cited above;

      D.      Permanently enjoin Defendants from engaging in the misconduct alleged herein;

      E.      Retain jurisdiction to monitor Defendants' compliance with the permanent injunctive relief;

      F.      Order that the discovery rule applies to extend any applicable limitations periods (and the corresponding class periods) for the Classes to the date on which Verizon first began charging the Administrative Charge;

      G.      Order disgorgement and/or restitution, including, without limitation, disgorgement of all revenues, profits and/or unjust enrichment that Verizon obtained, directly or indirectly, from Plaintiffs and class members as a result of the unlawful conduct alleged herein;

      H.      Order Defendants to hold in constructive trust all Administrative Charge payments received from the classes;

      I.      Order Defendants to perform an accounting of all such Administrative Charge payments;

      J.      Enter judgment in favor of Plaintiffs and the classes for damages suffered as a result of the conduct alleged herein;

      K.      Order Defendants to pay punitive, exemplary, treble, and/or statutory damages to the classes under the laws outlined herein;

      L.      Order Defendants to pay attorneys' fees and costs to the extent allowed by law;

      M.      Order Defendants to pay pre-judgment and post-judgment interest to the extent allowed by law; and

N.    Grant such other and further legal and equitable relief as the Court deems just and proper.

**JURY TRIAL DEMAND**

PLEASE TAKE NOTICE that the Plaintiffs hereby demand a trial by jury on all issues so triable.

Dated:  February 27, 2023                By: _____

DeNITTIS OSEFCHEN PRINCE, P.C.
Stephen P. DeNittis, Esq.
Joseph A. Osefchen, Esq.
Shane T. Prince, Esq.
525 Route 73 North, Suite 410
Marlton, NJ 08053
Telephone: (856) 797-9951
Facsimile: (856) 797-9978
Email: sdenittis@denittislaw.com
Email: josefchen@denittislaw.com
Email: sprince@denittislaw.com

HATTIS & LUKACS
Daniel M. Hattis, Esq.*
Paul Karl Lukacs, Esq.*
11711 SE 8th Street, Suite 120
Bellevue, WA 98005
Telephone: (425) 233-8650
Facsimile: (425) 412-7171
Email: dan@hattislaw.com
Email: pkl@hattislaw.com

* Pro Hac Vice Application To Be Submitted

*Attorneys for Plaintiffs and the Proposed Classes*