**DeNITTIS OSEFCHEN PRINCE, P.C.**
**Stephen P. DeNittis, Esq. (031981997)**
**Joseph A. Osefchen, Esq. (024751992)**
**Shane T. Prince, Esq. (022412002)**
**525 Route 73 North, Suite 410**
**Marlton, New Jersey 08053**
**(856) 797-9951**

**HATTIS & LUKACS**
**Daniel M. Hattis, Esq.\***
**Paul Karl Lukacs, Esq.\***
**11711 SE 8th Street, Suite 120**
**Bellevue, WA 98005**
**(425) 233-8650**

**CRIDEN & LOVE, P.A.**
**Michael E. Criden, Esq.\***
**Lindsey C. Grossman, Esq.\***
**7301 SW 57th Court, Suite 515**
**South Miami, FL 33143**
**(305) 357-9000**

**\* Pro Hac Vice Application**
**To Be Submitted**

**Attorneys for Plaintiffs and the Proposed Classes**

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| PAMELA M. ALLEN; LISA BAKER; BRIANA BELL; KIMBERLY BLAIR;  CAROLINE BONHAM; TAMMY BURKE; SHAUNA CAVALLARO; ERIKA CONLEY; KENDRA CONOVER; DYLAN CORBIN; RYAN CORBIN; LAURA CURRY; SHAKERA DYER; RUSSELL FROM; ASHTIN GAMBLIN; ERICKA GARDNER; JAMES HENSLEY; ADAM KELLER; KRISTA KIRBY; JAN LOMBARD; AARON MAXA; LINDSEY MORAN; JENNIFER OCAMPO-NEUBAUER; ANGEL PACHECHO; LORI SNYDER; KATHRYN TAYLOR; ANTHONY VALLECORSA; and BRAD YOUNG; on behalf of themselves and all others similarly situated,<br><br>                    Plaintiffs,<br><br>          v.<br><br>CELLCO PARTNERSHIP d/b/a VERIZON WIRELESS and VERIZON COMMUNICATIONS INC.,<br><br>                    Defendants. | CASE NO. 3:23-CV-1138-ZNQ-RLS<br><br><br>**PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTIO TO COMPEL ARBITRATION AND STAY PROCEEDINGS** |

## **TABLE OF CONTENTS**

**Page(s)**

TABLE OF AUTHORITIES……………………………………………...iii-iv

Summary of the Action……………………………………………………..1

Summary of the Argument……………………………………………………1

I.    VERIZON IS WRONG AS TO WHAT VERSIONS OF THE
VERIZON CUSTOMER AGREEMENT APPLY TO PLAINTIFFS'
CLAIMS IN THE CASE AT BAR…………………………………………….6

II.   VERIZON HAS NOT MET ITS ONEROUS BURDEN OF
OVERCOMING THE FEDERAL PRESUMPTION IN FAVOR
OF THE COURT DECIDING ALL ISSUES OF ABITRABILITY………10

     A.    With Regard to the May 2022 Notice Plaintiffs Subject to
the March 16, 2022 Arbitration Clause, There is No Clear
and Unmistakable Delegation Language……………………………10

     B.    With Regard to Both the May 2022 Notice and the December
2022 Notice Plaintiffs, Any Delegation To the Arbitrator
Would Be Unconscionable and Illusory Because The Mass
Arbitration Provision Prevents Claimants From Having Access
to the Arbitrator to Decide the Threshold Issue of Arbitrability…….17

III.   THE ARBITRATION AGREEMENT IS PROCEDURALLY
UNCONSCIONABLE.…………………………………………………..19

IV.   THE MASS ARBITRATION PROVISION (APPLICABLE TO
ALL PLAINTIFFS) IS SUBSTANTIVELY UNCONSCIONABLE
AND UNENFORCEABLE—AND VERIZON HAS ADMITTED
TO THIS COURT THAT IT IS NOT SEVERABLE………………………...20

V.   IN ADDITION TO THE MASS ARBITRATION PROVISION,
THE VERIZON AGREEMENTS ARE PERMEATED BY OTHER
UNCONSCIONABLE AND UNENFORCEABLE PROVISIONS……….28

A.    Both the March 2022 and November 2022 Agreements
Improperly Purport to Strip Plaintiffs of Their Statutory
Rights to Recover Treble Damages, Statutory Damages
and/or Punitive Damages……………………………………………28

B.    Both the March 2022 and November 2022 Agreements
Improperly Attempt to Strip Away Plaintiffs' Statutory
Right to Seek Injunctive Relief Under State Consumer Statutes……30

C.    Both the March 2022 and November 2022 Agreements Contain
an Exculpatory Clause Which Improperly Bars Plaintiffs from
Bringing or Proving Any Consumer Claim Which Does Not
Arise from the Bare Language of the Verizon Agreement Itself……32

D.    The March 2022 Agreement Contains a Provision Which
Unlawfully Bars Consumer Fraud Claims if Notice Is Not
Given Within 180 Days of Receipt of the Verizon Bill……………..34

VI.    THE UNCONSCIONABLE PROVISIONS IN THE VERIZON
AGREEMENT SO PERMEATE THE ARBITRATION SCHEME
THAT THE ENTIRE ARBITRATION CLAUSE SHOULD BE
STRICKEN…………………………………………………………...36

Conclusion…………………………………………………………………...38

## <u>TABLE OF AUTHORITIES</u>

### CASES

**Page(s)**

Achey, et al. v. Cellco P'ship (d/b/a Verizon Wireless), et al.,
Docket No. A-3639-21, 2023 N.J. Super. LEXIS 45 (Super. Ct.
App. Div. May 1, 2023), 2023 WL 3160849, ___ N.J. Super. ___
(Approved for Publication May 1, 2023)………………………………….passim

Allstate Ins. Co. v. Toll Bros., Inc., 171 F. Supp. 3d 417, 429 (E.D. Pa. 2016)….15

Alpert, Goldberg, Butler, Norton & Weiss, P.C. v. Quinn,
410 N.J. Super. 510, 533 (App. Div. 2009)…………………………………….13

Alexander v. Anthony Int'l, L.P., 341 F.3d 256, 271 (3d Cir. 2003)……………..36

AT&T Mobility LLC v. Concepcion, 563 U.S. 333, 346 (2011)…………………20

Awuah v. Coverall N. Am., Inc., 554 F.3d 7, 12 (1st Cir. 2009)…………………18

Blair v. Rent-A-Center, Inc., 928 F.3d 819, 825-831 (9th Cir. 2019)…………….30

Chesapeake Appalachia, LLC v. Scout Petroleum, LLC,
809 F.3d 746, 753 (3d Cir. 2016)……………………………………………..11, 15

Cintia Corsi et al. v. Cellco Partnership et al., Case No. 3:22-cv-04621-
ZNQ-RLS, Docket No. 31 (February 17, 2023, D.N.J.)…………………...4, 27, 36

Gilmer v. Interstate/Johnson Lane Corp., 500 U.S. 20, 26 (1991)………….....28, 34

Guidotti v. Legal Helpers Debt Resolution, L.L.C.,
716 F.3d 764, 773 (3d Cir. 2013)…………………………………………..20, 24

Jackson v. Rent-A-Center W., Inc., 581 F.3d 912, 919 (9th Cir. 2009)…………..18

MacClelland, et al. v. Cellco P'ship, et al.,
609 F. Supp. 3d 1024 (N.D. Cal. 2022)………………………………….passim

MacDonald v. CashCall, Inc., 883 F.3d 220, 226-227 (3d Cir. 2018)……………17

Major League Umpires Ass'n v. Am. League of Prof'l Baseball Clubs,
357 F.3d 272, 280-81 (3d Cir. 2004)…………………………………………...10

Nino v. Jewelry Exch., Inc., 609 F.3d 191, 202 (3d Cir. 2010)………………...19

Opalinski v. Robert Half Int'l, Inc., 761 F.3d 326, 335 (3d Cir. 2014)…………...10

**Summary of the Action**

As set forth in greater detail in the class complaint, the 27 Plaintiffs in the case at bar have filed a proposed class action on behalf of a nationwide class of Verizon Wireless customers and subclasses comprised of citizens of 15 states: Arizona, Colorado, Georgia, Illinois, Indiana, Maryland, Massachusetts, Michigan, Minnesota, North Carolina, Ohio, Pennsylvania, Texas, Virginia, and Wisconsin. The gravamen of all Plaintiffs' claims is that Verizon engaged in a "bait and switch" scheme in which Verizon's advertising promised them a lower price for wireless services before they signed up, but then Verizon imposed an additional and previously undisclosed "Administrative Charge" on Plaintiffs' wireless bills thereafter. In addition, once the "Administrative Charge" appeared on Plaintiffs' bills, Plaintiffs claim that Verizon lied to them by calling it a surcharge to reimburse Verizon for the costs of government charges billed to Verizon, when in fact the "Administrative Charge" is not in any way related to any government fee or charge.

**Summary of Argument**

Verizon is attempting to pull the wool over the Court's eyes regarding the arbitration clause in Verizon's Wireless Customer Service Agreement ("Verizon Agreement") and the repeated rulings by courts as to the gross unconscionability and unenforceability of its provisions. In actuality, every single case which has thus

far ruled on the enforceability of the Verizon arbitration clause has held 1) that the Agreement does not clearly delegate arbitrability issues to the arbitrator and 2) that the Agreement contains a "daisy chain" of provisions which are so unconscionable and contrary to public policy that their cumulative effect renders the entire arbitration clause unenforceable as a matter of contract law.

Most recently, on May 1, 2023, the New Jersey Appellate Division did this when it issued its published, precedential opinion in Achey, et al. v. Cellco P'ship (d/b/a Verizon Wireless), et al., Docket No. A-3639-21, 2023 N.J. Super. LEXIS 45 (Super. Ct. App. Div. May 1, 2023), 2023 WL 3160849, ___ N.J. Super. ___ (Approved for Publication May 1, 2023) (Exhibit A).[1] In Achey, the New Jersey Appellate Division addressed the exact same Verizon Wireless arbitration clause which applies to the claims of fifteen Plaintiffs in the case at bar, and unanimously held that the entire arbitration agreement was so permeated by unconscionability that it could not be "cured" by severance and thus the entire Verizon arbitration clause was null, void and unenforceable under contract law. See Achey, Exhibit A at Page 3:  **"Upon our de novo review, we hold that the arbitration agreement is unenforceable in its entirety as it is permeated by provisions which are unconscionable and violative of New Jersey public policy."** See also Achey,

---

[1] All references to exhibits herein are references to the exhibits attached to the accompanying Certification of Stephen DeNittis dated May 26, 2023 ("DeNittis Decl.").

Exhibit A at Page 18:  **"Ultimately, we find that the 'cumulative effect' of the various unconscionable terms renders the arbitration agreement 'unenforceable for lack of mutual assent.'"** As indicated on the accompanying copy of this opinion, this Appellate Division opinion in <u>Achey</u> was **"APPROVED FOR PUBLICATION"** on **"May 1, 2023"** and is therefore a precedential ruling on a matter of New Jersey contract law by New Jersey's second highest state court.

Similarly, in July of 2022, a federal court in California also struck down in its entirety the exact same Verizon arbitration clause which applies to 15 of the Plaintiffs in the case at bar. <u>See</u> <u>MacClelland, et al. v. Cellco P'ship, et al.</u>, 609 F. Supp. 3d 1024 (N.D. Cal. 2022).[2] In doing so, the <u>MacClelland</u> court held that Verizon had used its power as sole drafter of the clause in question to construct an illusory arbitration scheme by, <u>inter alia</u>, creating a so-called "bellwether" process (the mass arbitration provision) that required the <u>MacClelland</u> plaintiffs to wait in line for 156 years before they could even file their claims in arbitration, while leaving the statute of limitations running that entire time, thereby procedurally extinguishing such claims decades before any arbitration would actually take place. <u>See</u> <u>id.</u> at 1046 (**"In sum, the arbitration clause and the applicable limitations as a whole demonstrate a systematic effort to impose arbitration on a**

---

[2] The federal court in <u>MacClelland</u> also held that the Verizon Agreement did not clearly incorporate the AAA rules of arbitration as part of the agreement or delegate arbitrability issues to an arbitrator. <u>See</u> <u>MacClelland</u>, 609 F. Supp. 3d at 1031-1032.

customer as an inferior forum. **The Court reaches this conclusion based on the number of unconscionable provisions, their nature, and the overall effect which is entirely foreseeable and intended."**) (citation omitted). Like the New Jersey Appellate Division in <u>Achey</u>, the California federal court also concluded that there were numerous other unconscionable provisions which, when taken together, were so pervasive that the arbitration clause could not be "saved" by severing those provisions, holding instead that the entire Verizon arbitration clause was unenforceable. <u>See</u> <u>id.</u> at 1045 (**"Severance Is Not Appropriate Because the Agreement Is Permeated by Unconscionability"**).

Verizon has meanwhile admitted to this Court in a related case that the mass arbitration provision (the so-called "bellwether" process) is a central and essential part of the arbitration agreement and, thus, <u>cannot be severed</u> from the agreement—such that Verizon's Motion to Compel Arbitration rises or falls based on the enforceability of the mass arbitration provision. <u>See</u> <u>Cintia Corsi et al. v. Cellco Partnership et al.</u>, Case No. 3:22-cv-04621-ZNQ-RLS, Docket No. 31 (February 17, 2023, D.N.J.).

Verizon appears to now realize that the terms of the version of the Verizon Agreement ruled upon in <u>Achey</u> and <u>MacClelland</u> are now a "lost cause" vis-à-vis a motion to compel arbitration. To try to overcome this, Verizon is now trying to convince the Court in the case at bar that 1) Verizon did what both <u>Achey</u> and

MacClelland held could not be done and somehow "cured" the unconscionability in the Verizon Agreement arbitration clause by slightly "tinkering" with its terms around the margins, and 2) that two "amended" versions of the Verizon Agreement are the ones that actually apply to the claims of all of the Plaintiffs in the case at bar. For the reasons set forth herein, both defense contentions are wrong.

For the reasons set forth in detail in Section I, the claims of fifteen Plaintiffs in the case at bar are governed by the **March 16, 2022** version of the Verizon Agreement, which was in effect when those Plaintiffs notified Verizon of their disputes on May 22, 2022.[3] See Exhibit C. This version contains the very same arbitration clause, in the exact same language, which was addressed in Achey and MacClelland. See Section I herein.

In addition, while the claims of 12 other Plaintiffs in the case at bar who notified Verizon of their disputes on December 7, 2022 are subject to a version of the Verizon Agreement which was amended on **November 15, 2022**, that version contains a mass arbitration provision nearly identical to that found unconscionable and unenforceable in Achey and MacClelland. See Section I herein. This includes the same so-called "bellwether" provision which resulted in a scheme that both Achey and MacClelland found constituted an illusory arbitration process where it would take consumers over 100 years before their arbitration claims could actually

---

[3] This version is never discussed nor addressed by Verizon in its initial brief.

be filed and heard (and thus the delegation clause itself is also illusory since the threshold issue of arbitrability would likewise not be heard for over 100 years). See Sections I and IV herein.

Meanwhile—and contrary to the assertions in Verizon's brief—**none** of the Plaintiffs' claims in the case at bar are governed by the amended Verizon Agreement dated February 22, 2023. See Section I herein.

For the reasons set forth in greater detail throughout this memorandum, the versions of the Verizon Agreement which apply to all Plaintiffs' claims in the case at bar still suffer from the same deficiencies found to be grossly unconscionable and unenforceable by both the New Jersey Appellate Division in its published opinion in Achey and the federal court in its published opinion in MacClelland. Therefore, the result on this motion to compel arbitration should be the same as the motions to compel in Achey and MacClelland—Verizon's motion to compel arbitration should be denied.

## I.   VERIZON IS WRONG AS TO WHAT VERSIONS OF THE VERIZON CUSTOMER AGREEMENT APPLY TO PLAINTIFFS' CLAIMS IN THE CASE AT BAR.

Verizon appears to believe that its only hope of winning a motion to compel arbitration is to distance itself from the version of the Verizon Agreement that was struck down as unconscionable in its entirety by both the New Jersey Appellate Division in Achey and the federal court in MacClelland. Because of this, Verizon

seeks to convince this Court that two later amended versions of that agreement should apply to the claims of all of the Plaintiffs in the case at bar:  an amendment on November 15, 2022 and an amendment on February 23, 2023. Defendants' arguments as to what version of the Verizon Agreement apply to Plaintiffs' claims here are without merit.

The foundation of Defendants' flawed argument is the erroneous assertion by Verizon that, because Plaintiffs filed their complaint in federal court on February 27, 2023, the version of the Verizon Agreement in effect on that date should govern Plaintiffs' claims. That argument blatantly contradicts the plain language of the Verizon Agreement itself, every version of which makes clear that the date a consumer actually files a complaint in court <u>is not</u> the event which determines what version of the Verizon Agreement governs their claims.

To the contrary, every single version of the Verizon Agreement that has existed states plainly that all disputes are governed by the version of the Verizon Agreement in effect <u>when the dispute first arose</u>, and every version of the agreement states clearly that any subsequent amendments to the Verizon Agreement that occur after the dispute arose <u>will not</u> apply to that dispute. <u>See</u> Exhibit C, Verizon Agreement dated March 16, 2022 at Page 3, highlight No. 1 (**"if we make any changes to the dispute resolution provision of this Agreement, <u>such changes will not affect the resolution of any disputes that arose before</u>**

7

**such change.**") (emphasis added). <u>See also</u> Exhibit D, Amended Verizon

Agreement dated November 15, 2022 at Page 3, highlight No. 1 (**"if we make any**

**changes to the dispute resolution provision of this Agreement, <u>such changes</u>**

**<u>will not affect the resolution of any disputes that arose before such change</u>.**")

(emphasis added). Thus, the language of Verizon's own agreement makes clear that

the triggering event for determining whether an amendment to the Verizon

Agreement applies to a consumer dispute <u>is not</u> when a consumer files a civil

complaint in court, but rather when the dispute first arose (<u>i.e.</u>, when the consumer

gave Verizon written notice of their claims).

Here, it is undisputed that <u>all</u> of the Plaintiffs in the case at bar gave Verizon

actual written notice of their dispute and their claims over the "Administrative

Charge" long before they filed the current complaint in federal court on February

27, 2023 (notice which was required in all versions of the Verizon Agreement). <u>See</u>

DeNittis Decl. Exhibit E. Specifically, fifteen Plaintiffs in the case at bar (hereafter

"the May 2022 Notice Plaintiffs"[4]) first gave Verizon written notice of their dispute

and claims relating to the "Administrative Charge" on **May 27, 2022**. <u>See</u> DeNittis

Decl. Exhibit E, Written Notice of Dispute and Claims by the May 2022 Notice

---

[4] These fifteen Plaintiffs are Lisa Baker, Briana Bell, Kimberly Blair, Tammy Burke, Erika
Conley, Kendra Conover, Shakera Dyer, James Hensley, Adam Keller, Jan Lombard, Aaron
Maxa, Lindsey Moran, Lori Snyder, Kathryn Taylor and Anthony Vallecorsa.

Plaintiffs to Verizon dated May 27, 2022. This was long before either the

November 15, 2022 or February 22, 2023 amendments to the Agreement—the

amendments that Verizon seeks to apply here—ever existed. Thus, the claims of

the May 2022 Notice Plaintiffs are governed by the version of the Verizon

Agreement arbitration clause in effect on May 27, 2022,[5] when the notice of

dispute was provided. That version contains <u>the exact same operative arbitration

provisions, in the very same language,</u> found to be unconscionable and

unenforceable by both the New Jersey Appellate Division in its published opinion

in <u>Achey</u> and the federal court in its published opinion in <u>MacClelland</u>.

The other 12 Plaintiffs in the case at bar (hereafter the "December 2022

Notice Plaintiffs"[6]) first gave Verizon written notice of their dispute and claims

relating to the "Administrative Charge" on **<u>December 7, 2022</u>**. <u>See</u> DeNittis Decl.

Exhibit F, Written Notice of Dispute and Claims by the December 2022 Notice

Plaintiffs to Verizon dated December 7, 2022. This was several months <u>before</u> the

February 2023 amendment to the Agreement which Verizon seeks to apply. Thus,

by the plain written terms of Verizon's own form contract, Verizon's February 2023

amendment to the agreement <u>does not</u> govern the claims of these Plaintiffs either.

---

[5] <u>See</u> Exhibit C.

[6] These 12 Plaintiffs are Pamela M. Allen, Caroline Bonham, Shauna Cavallaro, Dylan Corbin, Laura Curry, Russell From, Ashtin Gamblin, Ericka Gardner, Krista Kirby, Jennifer Ocampo-Neubauer, Angel Pachecho and Brad Young.

Rather, their claims are governed by the version of the Verizon Agreement in effect when they gave notice on December 7, 2022; a version which contained most of the same unconscionable provisions—including a nearly identical mass arbitration provision—which were the basis of the <u>Achey</u> and <u>MacClelland</u> decisions to strike Verizon's arbitration clause in its entirety.

## II.   VERIZON HAS NOT MET ITS ONEROUS BURDEN OF OVERCOMING THE FEDERAL PRESUMPTION IN FAVOR OF THE COURT DECIDING ALL ISSUES OF ABITRABILITY.

### A.   <u>With Regard to the May 2022 Notice Plaintiffs Subject to the March 16, 2022 Arbitration Clause, There is No Clear and Unmistakable Delegation Language.</u>

As repeatedly held by the Third Circuit, **"[i]t is presumed that courts must decide questions of arbitrability 'unless the parties clearly and unmistakably provide otherwise.'"** <u>Major League Umpires Ass'n v. Am. League of Prof'l Baseball Clubs</u>, 357 F.3d 272, 280-81 (3d Cir. 2004). That presumption can only be overcome by meeting an onerous burden which the Third Circuit has described thusly:  **"The burden of overcoming the presumption is onerous, as it requires express contractual language unambiguously delegating the question of arbitrability to the arbitrator."** <u>Opalinski v. Robert Half Int'l, Inc.</u>, 761 F.3d 326, 335 (3d Cir. 2014).

Specifically, the party seeking to overcome the presumption in favor of the court deciding all issues of arbitrability must show there is express language in the

contract which **"clearly and unmistakably"** delegates arbitrability issues to an arbitrator. <u>See</u> <u>Chesapeake Appalachia, LLC v. Scout Petroleum, LLC</u>, 809 F.3d 746, 753 (3d Cir. 2016):

> **The burden of overcoming the presumption is onerous, as it requires express contractual language unambiguously delegating the question of arbitrability to the arbitrator.**

In the case at bar, Verizon has failed to meet that onerous burden. Nowhere in the March 16, 2022 version of the Verizon Agreement, which applies to the claims of the fifteen May 2022 Notice Plaintiffs in the case at bar, is there any express language—let alone "clear and unmistakable" language—which states that the consumer is trading away the right to have the court decide arbitrability issues and/or that such issues will instead be decided by an arbitrator. <u>See</u> DeNittis Decl. Exhibit C, Verizon Agreement which applies to the claims of the May 2022 Notice Plaintiffs.[7]

---

[7] Indeed, in the March 16, 2022 version of the Verizon Agreement (Exhibit C), the version that existed when the fifteen May 2022 Notice Plaintiffs sent their written notice of dispute to Verizon, there is only one provision in the entire agreement which expressly mentions who decides any issue involving interpretation of the agreement. That portion of the Verizon Agreement states in relevant part: **"3)… ANY QUESTION REGARDING THE ENFORCEABILITY OR INTERPRETATION OF THIS PARAGRAPH SHALL BE DECIDED BY A COURT AND NOT THE ARBITRATOR."** <u>See</u> Exhibit C at highlight No. 6. These words in the text of the Verizon Agreement itself clearly <u>do not</u> overcome the presumption against delegation of arbitrability set forth in the aforementioned precedents. To the contrary, the average consumer reading these words would conclude that this sentence in the Verizon Agreement is telling them that it is the court—"and not the arbitrator"—who decides issues of interpretation and enforcement of the contract.

In fact, the March 16, 2022 (Exhibit C) version of the Verizon Agreement, which governs the claims of the fifteen May 2022 Notice Plaintiffs, contains the exact same arbitration clause, in the exact same language, which was declared unconscionable and unenforceable in its entirety by both the New Jersey Appellate Division in its published decision in <u>Achey</u> and by the federal district court in its published decision in <u>MacClelland</u>. <u>See</u> Section I.

Despite this, Verizon's motion erroneously argues that there is language in the March 16, 2022 (Exhibit C) version of the Verizon Agreement which Verizon contends "incorporates" the AAA rules of arbitration into the Verizon Agreement. But there is no language whatsoever in that version of the Verizon Agreement which comes close to clearly and unambiguously incorporating any AAA arbitration rule into the contract between Verizon and these Plaintiffs. Nothing in the Verizon Agreement says that the AAA Rules are being incorporated into the Agreement, or made part of the Agreement, or any other similar language.

In fact, to the contrary, as further discussed below, the Verizon Agreement says either the AAA Rules or the BBB Rules can apply—and the BBB rules do not contain a delegation clause. Meanwhile, at no time did Verizon ever provide any of the Plaintiffs with either a copy of any AAA arbitration rules or a summary of what the AAA rules purportedly say on any topic, including delegation of arbitrability, and the Agreement does not even bother to identify for consumers what specific

AAA rule or rules of arbitration Verizon contends delegates arbitrability decisions to an arbitrator. Put simply, there is nothing in the March 16, 2022 (Exhibit C) version of the Verizon Agreement (i.e., the version which applies to the claims of the fifteen May 2022 Notice Plaintiffs in the case at bar) which meets the contract law requirements to properly "incorporate" any AAA rule—or any other document extrinsic to the Verizon Agreement itself—into the Verizon Agreement. See Alpert, Goldberg, Butler, Norton & Weiss, P.C. v. Quinn, 410 N.J. Super. 510, 533 (App. Div. 2009):

> **In order for there to be a proper and enforceable incorporation by reference of a separate document, <u>the document to be incorporated must be described in such terms that its identity may be ascertained beyond doubt and the party to be bound by the terms must have had "knowledge of and assented to the incorporated terms</u>." (emphasis added)**

Indeed, the sole mention of the AAA rules in this version of the Verizon Agreement merely states:  **"THE PARTY BRINGING THE CLAIM CAN CHOOSE EITHER THE AAA'S CONSUMER ARBITRATION RULES OR THE BBB'S RULES FOR BINDING ARBITRATION."**[8] (emphasis added).

See DeNittis Decl. Ex. C at highlight No. 5. This language plainly <u>does not</u> tell consumers "clearly and unmistakably" that they <u>must</u> arbitrate under the AAA

---

[8] "AAA" stands for American Arbitration Association and "BBB" stands for Better Business Bureau. It is undisputed that Defendants never actually provided consumers with any copy of any of the AAA and BBB arbitration rules or summarized what any of the AAA and BBB rules of arbitration say about who decides arbitrability (or any other topic).

rules. Instead, the plain language of the Verizon Agreement quoted above tells consumers the opposite:  that they do not have to accept arbitration under the AAA rules and that they may instead choose arbitration under the BBB arbitration rules. This is important because, unlike the AAA arbitration rules, it is undisputed that the BBB arbitration rules do not contain any provision which delegates arbitrability decisions to the arbitrator. See DeNittis Decl. Ex. G, BBB rules of arbitration, which lack any language delegating arbitrability issues to an arbitrator. This conclusion is borne out by the federal court's ruling in MacClelland, 609 F. Supp. 3d at 1032, where the federal judge ruled that the same version of the Verizon Agreement which applies to the claims of the May 2022 Notice Plaintiffs did not clearly delegate arbitrability decisions to the arbitrator, noting **"The BBB rules do not contain an explicit delegation clause."**

In light of this, Verizon's erroneous argument that the language of Verizon Agreement applicable to the May 2022 Notice Plaintiffs "clearly and unmistakably" incorporated the AAA arbitration rules collapses like an ill-prepared souffle. Indeed, it is hard to imagine a less clear and more ambiguous purported "incorporation" of the AAA arbitration rules than the above-quoted language in the Verizon Agreement; contract language which literally tells consumers they do not have to arbitrate under AAA rules and that they may instead arbitrate under another set of arbitration rules (the BBB rules) which have no delegation of arbitrability

14

whatsoever.[9]

This conclusion is borne out by the holding of the federal court in

MacClelland, which correctly rejected Verizon's argument that the AAA rules

regarding delegation of arbitrability were incorporated into this version of the

Verizon Agreement. See MacClelland, 609 F. Supp. 3d at 1032:

> **the [Verizon] Agreement provides that for claims of $10,000
> or less, <u>the party bringing the claim can choose either the
> AAA's consumer arbitration rules or the BBB's rules for
> binding arbitration</u>. The BBB rules do not contain an explicit
> delegation clause. <u>The Court thus finds there is not clear and
> unmistakable evidence that the parties agreed to arbitrate
> issues of arbitrability,</u> particularly since it is not clear that the
> consumer would consider any individual claim to be worth
> over $10K. (emphasis added)**

This conclusion is further borne out by the New Jersey Appellate Division's

ruling in the published decision in Achey. The Appellate Division in Achey

---

[9] In addition, in <u>Chesapeake Appalachia, LLC v. Scout Petroleum, LLC</u>, 809 F.3d 746, 761-63 (3d Cir. 2016) (Third Circuit held that language in a contract mandating that arbitration would occur under **"the rules of the American Arbitration Association"** did not meet the defendant's **"onerous"** burden of proving a **"clear and unmistakable"** delegation of arbitrability via the delegation clause in one of the AAA rules, stating: **"Given the actual language of the Leases themselves, the nature and terms of the various AAA rules, and the existing case law, we determine that the District Court was correct when it concluded that the Leases are "far from the 'clear and unmistakable' allowance needed for' the arbitrators to decide the question of class arbitrability."**). <u>See also</u> <u>Allstate Ins. Co. v. Toll Bros., Inc.</u>, 171 F. Supp. 3d 417, 429 (E.D. Pa. 2016) holding that: **"the incorporation of the two aforementioned sets of arbitration rules by reference cannot serve as clear and unmistakable evidence of the parties' intent to arbitrate arbitrability"** because **"incorporating forty pages of arbitration rules into an arbitration clause is tantamount to inserting boilerplate inside of boilerplate, and to conclude that a single provision contained in those rules amounts to clear and unmistakable evidence of an unsophisticated party's intent would be to take 'a good joke too far.'"**

proceeded to decide all issues of unconscionability <u>de novo</u> and ruled that the entire arbitration clause in this same version of the Verizon Agreement was so permeated with unconscionable provisions that the entire arbitration clause was unenforceable. <u>See</u> Exhibit A, <u>Achey</u>, ___ N.J. Super ___, 2023 N.J. Super. LEXIS 45, at *2 (**"Upon our de novo review, we hold that the arbitration agreement is unenforceable in its entirety as it is permeated by provisions which are unconscionable and violative of New Jersey public policy."**). Clearly, the New Jersey Appellate Division in <u>Achey</u> could not have done this if the Verizon Agreement successfully delegated all arbitrability decisions to the arbitrator.

Accordingly, it is clear that the March 16, 2022 version of the Verizon Agreement which governs the claims of the fifteen May 2022 Notice Plaintiffs in the case at bar does not contain any clear language sufficient to either 1) successfully incorporate the AAA arbitration rules into the consumer contract and/or 2) tell consumers clearly and unambiguously that arbitrability decisions are being taken away from the court and delegated to an arbitrator. Put simply, Verizon has made no showing that there is language in this version of the consumer contract which meets the "onerous" burden needed to overcome the presumption that courts, not arbitrators, decide issues of arbitrability and unconscionability.

**B.**     **With Regard to Both the May 2022 Notice and the December 2022 Notice Plaintiffs, Any Delegation To the Arbitrator Would Be Unconscionable and Illusory Because The Mass Arbitration Provision Prevents Claimants From Having Access to the Arbitrator to Decide the Threshold Issue of Arbitrability.**

The November 15, 2022 Verizon Agreement (applicable to the twelve December 2022 Notice Plaintiffs), unlike the March 16, 2022 Agreement, contains an express delegation clause. However, this delegation clause is itself unenforceable. (And with regard to the fifteen May 2022 Notice Plaintiffs who are subject to the March 16, 2022 Agreement, even if there were a delegation clause in that contract—which Plaintiffs do not concede—it would likewise be unenforceable and illusory for the same reasons discussed herein.)

As further explained in Section IV below, the purported "arbitration" being promised to Plaintiffs by Verizon is entirely illusory because the so-called "bellwether" provision requires Plaintiffs to wait more than 100 years before they may even file their claims in arbitration. Because an illusory remedy issue is a question of contract formation, it must be decided by a court and not by an arbitrator, regardless of the existence of a potentially applicable delegation clause.

It is well-established that if the offer to arbitrate in a contract is illusory then any purported delegation of arbitrability decisions to the arbitrator in that contract is likewise illusory and enforceable. See MacDonald v. CashCall, Inc., 883 F.3d 220, 226-227 (3d Cir. 2018), **"[b]ecause the arbitration procedure described in**

the agreement is fabricated and illusory, <u>any provision requiring that the enforceability of the arbitration procedure must be decided through arbitration is also illusory and unenforceable</u>." (emphasis added). <u>See</u> <u>also</u> <u>Awuah v. Coverall N. Am., Inc.</u>, 554 F.3d 7, 12 (1st Cir. 2009) (holding that if the purported arbitration scheme offered in the contract was illusory, any provision delegating arbitrability issues to the arbitrator was also contrary to public policy and unenforceable, stating: **"What is the most potent concern is an argument embedded… in appellees' brief, namely, that arbitration in this case may itself be an illusory remedy. In principle, <u>having the arbitrator decide questions of validity may be fine if the parties so agreed; but if the terms for getting an arbitrator to decide the issue are impossibly burdensome, that outcome would indeed raise public policy concerns.</u>"**) (emphasis added); <u>Jackson v. Rent-A-Center W., Inc.</u>, 581 F.3d 912, 919 (9th Cir. 2009) (holding that the issue of whether an arbitration provision is unconscionable **"is an issue for the court to determine"** and that **"where, as here, an arbitration agreement delegates the question of the arbitration agreement's validity to the arbitrator, a dispute as to whether the agreement to arbitrate arbitrability is itself enforceable is nonetheless for the court to decide as a threshold matter."**).

As indicated in great detail in Section IV, the entire Verizon arbitration scheme is illusory because Verizon's so-called "bellwether" process in its mass

arbitration provision requires Plaintiffs in the case at bar and other Verizon customers to wait over 100 years before they may even file their claims in arbitration (let alone have them decided). Thus, if Verizon's erroneous "delegation of arbitrability" argument is accepted by this Court, the future arbitrator who gets to finally decide the "arbitrability" issues relating to Plaintiffs' claims will do so sometime in the 22nd Century and that arbitrator has not even been born yet!

Thus, it is submitted that Verizon's proposal to let that future arbitrator decide—more than a hundred years from now—the "arbitrability" issues in this case is just as illusory as the rest of Verizon's arbitration scheme. Under the cases cited above, such a purported delegation of arbitrability issues to this as yet unborn arbitrator a century from now is clearly illusory, unconscionable and unenforceable.

## III. THE ARBITRATION AGREEMENT IS PROCEDURALLY UNCONSCIONABLE.

As held by the Third Circuit in Nino v. Jewelry Exch., Inc., 609 F.3d 191, 202 (3d Cir. 2010), a contract which is **"presented [to a consumer] on a take-it-or-leave-it basis"** where there is a **"disparity in bargaining power between the two parties at the time the contract was signed"** constitutes a contract of adhesion in which **"the arbitration agreement is procedurally unconscionable."** There is no question that the Verizon Agreement is such a contract of adhesion, as correctly found by the New Jersey Appellate Division in its published opinion in

19

_Achey_. <u>See</u> Exhibit A, <u>Achey</u>, ___ N.J. Supp. ___, 2023 N.J. Super. LEXIS 45, at

*9 (**"At the outset, we recognize that the customer agreement at issue is a**

**contract of adhesion, as it is 'presented on a take-it-or-leave-it basis . . .**

**without opportunity for the 'adhering' party to negotiate. . . .'"**).

## IV. THE MASS ARBITRATION PROVISION (APPLICABLE TO ALL PLAINTIFFS) IS SUBSTANTIVELY UNCONSCIONABLE AND UNENFORCEABLE—AND VERIZON HAS ADMITTED TO THIS COURT THAT IT IS NOT SEVERABLE.

The goal of the FAA was to provide the consumer with a fair, neutral and

speedy alternative forum in which customers can resolve their claims outside of

court. <u>See</u> <u>AT&T Mobility LLC v. Concepcion</u>, 563 U.S. 333, 346 (2011) (**"A**

**prime objective of an agreement to arbitrate is to achieve streamlined**

**proceedings and speedy expeditious results."**); <u>Guidotti v. Legal Helpers Debt</u>

<u>Resolution, L.L.C.</u>, 716 F.3d 764, 773 (3d Cir. 2013) (**"the FAA places**

**considerable emphasis on 'efficient and speedy dispute resolution.'"**).

As outlined in detail herein, Verizon intentionally designed the mass

arbitration provision—which Verizon refers to as the so-called "bellwether"

provision—to do the exact opposite of providing consumers with a fair, neutral and

speedy method of resolving their claims. Rather, Verizon's goal—as correctly

found by both the New Jersey Appellate Division in <u>Achey</u> and the federal court in

<u>MacClelland</u>—was to create a mechanism for extinguishing consumer claims

entirely, in a decades long process, without any fair opportunity of adjudication in

20

any forum in a timely fashion.

Despite what Verizon claims, the true purpose of this scheme is to protect Verizon from arbitration claims by consumers who have exercised their legal right to retain the same experienced lawyers as other Verizon customers, and to punish such customers with a decades long wait and ultimately the extinction of their arbitration claims. See DeNittis Decl. Ex. C, Verizon Agreement in effect on May 22, 2002 at highlight No. 7 and DeNittis Decl. Ex. D, Verizon Agreement in effect on December 2, 2022 at highlight No. 5.

Put simply, this so-called "bellwether" process requires any consumer represented by an attorney who also represents 25 other Verizon customers who are bringing similar claims to wait in line for years before they can even file their claims in arbitration, let alone have those claims heard. All claimants represented by the same counsel then must wait in that line as the claims of the consumers ahead of them proceed, in batches of 10 at a time. Id. As each set of 10 claims are resolved, the next 10 may be filed. Id. The process continues until all such claims are resolved. See Exhibit C, Verizon Agreement at Highlight 7 and Exhibit D, November 15, 2022 Amended Verizon Agreement at Highlight 5:

> **IF THE PARTIES ARE UNABLE TO RESOLVE THE REMAINING CASES AFTER THE CONCLUSION OF THE BELLWETHER PROCEEDING, EACH SIDE MAY SELECT ANOTHER FIVE CASES TO PROCEED TO ARBITRATION FOR A SECOND BELLWETHER PROCEEDING. <u>THIS PROCESS MAY CONTINUE UNTIL</u>**

**THE PARTIES ARE ABLE TO RESOLVE ALL OF THE CLAIMS, EITHER THROUGH SETTLEMENT OR ARBITRATION. (emphasis added)**

Upon the first reading of this so-called "bellwether" provision, this process may sound somewhat innocuous. Serious problems become evident, however, when one considers the practical effect of this scheme. The average time for completing a single AAA arbitration is 6.9 months. See DeNittis Decl. Ex. H, AAA statement indicating that average time for completion of an arbitration is 6.9 months. See also Exhibit A, Achey, ___ N.J.Supp. ___, 2023 N.J. Super. LEXIS 45, at *5 (**"According to AAA, the average consumer arbitration requires 6.9 months to complete."**); MacClelland, 609 F. Supp. 3d at 1040 (**"According to statistics from the American Arbitration Association showing that the average disposition time for an arbitration takes a little under seven months"**).

Thus, depending on how many Verizon customers chose to be represented by the same attorney, the waiting list for consumers to even file their arbitration claims—let alone have them heard—can range from many years to well over a century. Indeed, in Achey, ___ N.J.Super. ___, 2023 N.J. Super. LEXIS 45, at *6, the New Jersey Appellate Division held that **"plaintiffs would be required to wait 145 years to file their claims, until the preceding 2,537 claims brought by plaintiffs' counsel have been arbitrated pursuant to the bellwether process."** Similarly, in MacClelland, 609 F. Supp. 3d 1024, 1042, the federal court held that

Verizon's "bellwether" provision could require the <u>MacClelland</u> plaintiffs—who are represented by the same counsel as the Plaintiffs in the case at bar—to wait over 156 years to have their claims decided in arbitration, stating: **"Delaying the ability of one to vindicate a legal claim by years, possibly 156 years, 'conflict[s] with one of the basic principles of our legal system—justice delayed is justice denied'"**.

This principle is perfectly illustrated by the 27 Plaintiffs in the case at bar (who are represented by the same counsel as the plaintiffs in <u>Achey</u> and <u>MacClelland</u>). Plaintiffs in the case at bar have elected to be represented by experienced attorneys who also currently represent over 4,000 other Verizon customers who are likewise challenging the Verizon "Administrative Charge" and who have submitted their claims to arbitration. Verizon has agreed to "waive" the bellwether process for approximately half of those customers (after the AAA refused to enforce the "bellwether process" for those customers due to the unreasonable delay it created), <u>but Verizon refused to do so with respect to the remaining 2,000-plus customers, who, like the Plaintiffs in this case, are subject to the March 16, 2022 and November 15, 2022 Agreements</u>. See DeNittis Decl. Paragraph 3.

The AAA has directed that those 2,000-plus arbitrations must proceed in groups of 10 at a time pursuant to the so-called "bellwether" process. <u>Id</u>. at

Paragraphs 2-3. Thus, merely because the 27 Plaintiffs in the case at bar have elected to be represented by these same experienced attorneys as over 2,000 other Verizon customers who are ahead of them in line, the Plaintiffs in the case at bar would have to wait until every one of those more than 2,000 other arbitration claims reach their conclusion—in batches of ten at a time—before the 27 Plaintiffs in the case at bar are even allowed to file their arbitration claims, let alone have them heard. For the Plaintiffs in the case at bar, that process would take <u>more than a century</u>.[10] Needless to say, such a process is the very antithesis of the **"efficient and speedy dispute resolution"** which underlies the FAA as articulated in cases such as <u>Guidotti v. Legal Helpers Debt Resolution, L.L.C.</u>, 716 F.3d 764, 773 (3d Cir. 2013).

Based on these considerations, the New Jersey Appellate Division in <u>Achey</u> had no trouble concluding that this so-called "bellwether" process in the Verizon Agreement arbitration clause was unconscionable on its face and unenforceable under contract law. <u>See</u> Exhibit A, <u>Achey</u>, ___ N.J.Super. ___, 2023 N.J. Super. LEXIS 45, at *12-14:

---

[10] This calculation is based on completing 10 arbitrations every 6.9 months or 17.9 arbitrations per year. At that rate, it would require customers at the back of 2,000-person line – including the 27 Plaintiffs herein – to wait 111 years and 6 months to file their arbitration claims and have them heard. Nor is it at all clear that AAA can actually resolve 17.9 arbitrations per year. Indeed, since March 15, 2022, several thousand consumers represented by Plaintiffs' counsel have filed their notices of arbitration claims over the Verizon "Administrative Charge." To date, not one such arbitration has yet been concluded, settled or otherwise resolved <u>See</u> DeNittis Decl. at Paragraph 12.

> **we find that the bellwether provision is unconscionable on its face because it gives all decision-making power to defendants as to how long the "batching process" would continue and leaves plaintiffs without any protection to ensure that their claims would be heard in a timely manner… To that end, the customer agreement provides no time limit for how long the bellwether process could continue** and fails to specify the number of cases that would need to be arbitrated before all the remaining cases would be settled. (emphasis added)

Similarly, the federal court in <u>MacClelland</u>, 609 F. Supp. 3d 1024, 1042, held that Verizon's "bellwether" scheme was unconscionable and unenforceable, stating:

> **The Court agrees with Plaintiffs that this provision is substantively unconscionable. Requiring the consumers who retain counsel willing to represent them in cases such as this to wait months, more likely years before they can even submit a demand for arbitration is "unreasonably favorable" to Verizon. Delaying the ability of one to vindicate a legal claim by years, possibly 156 years, "conflict[s] with one of the basic principles of our legal system—justice delayed is justice denied." Terms that "contravene the public interest or public policy" are substantively unconscionable.** (emphasis added)

The <u>Achey</u> and <u>MacClelland</u> courts were correct in their analysis. Verizon cannot use its contract of adhesion—and its power to unilaterally amend the Verizon Agreement at will—to turn the Verizon Agreement into an instrument for creating a delay of over 100 years before consumer claims can be filed and heard in arbitration. To force consumers to trade away their right to sue in court for such an illusory "opportunity" at arbitration is directly contrary to the purposes underlying the FAA and is the very archetype of unconscionability.

With regard to the March 16, 2022 Verizon Agreement applicable to the fifteen May 2022 Notice Plaintiffs, Verizon carried the scheme even further by expressly including a statute of limitations defense such that consumer claims would expire, and not be tolled, while consumers waited years (here, over 100 years) in the 10 at a time queue to file their claims.  The March 16, 2022 version of the Verizon Agreement states:  **"THE SAME DEFENSES ARE ALSO AVAILABLE TO BOTH PARTIES AS WOULD BE AVAILABLE IN COURT, INCLUDING ANY APPLICABLE STATUTE OF LIMITATIONS."** (emphasis added). <u>See</u> DeNittis Decl. Ex. C at highlight No. 4.

Both <u>Achey</u> and <u>MacClelland</u> noted that this state of affairs highlights the unfairness of the already unconscionable Verizon "bellwether" scheme. <u>See</u> Exhibit A, <u>Achey</u>, ___ N.J.Super. ___, 2023 N.J. Super. LEXIS 45, at *13:

> **<u>the agreement prejudices plaintiffs by failing to toll the statute of limitations while the bellwether process is underway</u>. Despite defendants' assurance to the contrary, the only place where the statute of limitations is mentioned in the agreement is where it notes that the statute of limitations can be used as a valid defense in arbitration. (emphasis added)**

<u>See</u> <u>also</u> <u>MacClelland</u>, 609 F. Supp. 3d at 1042:

> **<u>In addition to the length of delay, the provision is pregnant with the risk that claims will be effectively barred when coupled with the statute of limitations. The Agreement expressly reserves Verizon's right to raise a statute of limitations defense in arbitration</u>…Under the Mass Arbitration Provision, consumers may not "file" their claims in arbitration until all preceding traunches are adjudicated.**

> **Those in the queue who are not able to file within the limitations period would be forever barred**. The clause contains no tolling provision. The forfeiture of entire legal rights contravenes public policy. **(emphasis added) (citations omitted)**

In sum, the mass arbitration provision in both the March 16, 2022 and November 15, 2022 Agreements is unconscionable and unenforceable. Meanwhile, **Verizon has admitted to this Court in a related case that the mass arbitration provision is a central and essential part of the arbitration agreement and, thus, cannot be severed from the Agreement**—such that the entire arbitration agreement rises or falls based on the enforceability of the mass arbitration provision. See Cintia Corsi et al. v. Cellco Partnership et al., Case No. 3:22-cv-04621-ZNQ-RLS, Docket No. 31 (February 17, 2023, D.N.J.) (hereinafter, "Corsi Reply in Support of Motion to Compel Arbitration").

Specifically, Verizon stated:

> Finally, **while the mass-arbitration provision is central to the arbitration agreement, and thus not severable,** if the Court considers the remaining provisions and finds any unenforceable, it can sever them, as set forth in the Agreement.

Corsi Reply in Support of Motion to Compel Arbitration, p. 2. (emphasis added).

Twelve pages later Verizon further stated:

> Here, **the preclusion on allowing a mass of identical arbitration claims to be filed (triggering fee obligations) before the bellwether trial process has occurred is essential, id., so it is not severable,** but the remaining provisions plaintiffs challenge are not essential.

Id., p. 14 (emphasis added).

27

Thus, if this Court, like in <u>Achey</u> and <u>MacClelland</u>, finds that the mass arbitration provision is unenforceable, then (as admitted by Verizon), this Court must deny Verizon's motion to compel arbitration in its entirety.

**V.    IN ADDITION TO THE MASS ARBITRATION PROVISION, THE VERIZON AGREEMENTS ARE PERMEATED BY OTHER UNCONSCIONABLE AND UNENFORCEABLE PROVISIONS.**

**A.    <u>Both the March 2022 and November 2022 Agreements Improperly Purport to Strip Plaintiffs of Their Statutory Rights to Recover Treble Damages, Statutory Damages and/or Punitive Damages</u>**

The Verizon Agreements are permeated by other unconscionable and unenforceable provisions. For example, both the March 16, 2022 and the November 15, 2022 Agreements contain a damages limitation provision which includes a waiver of Plaintiffs' right to seek treble damages, statutory damages, and/or punitive damages. This provision is unconscionable and unenforceable because an arbitration clause cannot strip away consumer rights granted to consumers by statute. <u>See</u>, <u>e.g.</u>, <u>Gilmer v. Interstate/Johnson Lane Corp.</u>, 500 U.S. 20, 26 (1991) (**"by agreeing to arbitrate a statutory claim, a party does not forgo the substantive rights afforded by the statute; it only submits to their resolution in an arbitral, rather than a judicial, forum."**)

Verizon's damages limitation provision states as follows:  **"You and Verizon both agree to limit claims against each other solely to direct damages. That means <u>neither of us will claim any damages that are indirect, special,</u>**

**consequential, incidental, treble or punitive.**" (emphasis added). <u>See</u> DeNittis Decl. Ex. C at highlight No. 3. <u>See</u> <u>also</u>  Ex. D, Amended Verizon Agreement dated November 15, 2022 at highlight 2 ("**You and Verizon both agree to limit claims against each other solely to direct damages…neither of us will claims any damage that are indirect, special, consequential, incidental, treble or punitive, regardless of the theory of liability.**").

In <u>Achey</u>, the New Jersey Appellate Division correctly affirmed the portion of the lower court's ruling which "**struck the limitation on damages clause… finding that it immunized defendants from paying treble damages in contravention of the CFA.**" <u>See</u> Exhibit A, <u>Achey</u>, ___ N.J.Super. ___, 2023 N.J. Super. LEXIS 45, at *6. Likewise, the federal court in <u>MacClelland</u> found the bar on treble and other statutory damages to be unconscionable, stating at <u>MacClelland</u>, 609 F. Supp. 3d at 1037:  "**<u>courts have found substantive unconscionability where an arbitration clause limits the types of remedies that would be available under the statute</u>, thus violating the 'principle that an arbitration agreement may not limit statutorily imposed remedies such as punitive damages and attorney fees.' … <u>The Court concludes that this provision is substantively unconscionable</u>.**" (emphasis added).

In the case at bar, each Plaintiff is suing under a state consumer protection statute which allows a prevailing consumer to recover treble damages, statutory

damages, punitive damages and/or attorneys' fees. The Verizon provision at issue seeks to take away such statutory rights in exactly the same manner that <u>Achey</u> and <u>MacClelland</u> held was unconscionable. Thus, this provision should also be found to be unconscionable and unenforceable in the case at bar.

      **B.**      <u>**Both the March 2022 and November 2022 Agreements Improperly Attempt to Strip Away Plaintiffs' Statutory Right to Seek Injunctive Relief Under State Consumer Statutes.**</u>

Just because they are subject to an arbitration clause, consumers do not lose the rights they are granted by state or federal consumer protection statutes to act as private attorneys general and to seek an injunction to protect the public from unlawful trade practices. <u>Blair v. Rent-A-Center, Inc.</u>, 928 F.3d 819, 825-831 (9th Cir. 2019) (holding that the FAA did not allow an arbitration clause to strip away a citizen's statutory right to seek a public injunction and holding that an attempt to take away this statutory right in an arbitration clause was unconscionable and unenforceable).

Despite this, both the March 16, 2022 and November 15, 2022 Agreements which apply to Plaintiffs' claims seek to strip away the statutory right under state consumer protection statutes to obtain injunctive relief to benefit the public and to end the unlawful practice. <u>See</u> Exhibit C highlight No. 6 and Exhibit D highlight No. 4, both of which state: **"[T]he arbitrator may award money or <u>injunctive relief only in favor of the individual party</u> seeking relief and only to the extent**

necessary to provide relief warranted by that party's individual claim. **No class, representative or private attorney general or general injunctive relief theories may be maintained in any arbitration held under this agreement.**" (emphasis added).

In MacClelland, the federal court correctly found that this same language in the Verizon Agreement at issue in the case at bar was unconscionable because it sought to take away the statutory right granted to consumers to act as a private attorney general and to obtain injunctive relief whose scope extends beyond the claimant. See MacClelland, 609 F. Supp. 3d at 1037-1038:

> **a contractual provision purporting to waive the right to seek public injunctive relief in any forum is unenforceable**… **Verizon's agreement limits the award of any injunctive relief to "the individual party seeking relief and only to the extent necessary to provide relief warranted by that party's individual claim." Agreement at 6.** **By precluding injunctive relief benefitting anyone other than the individual claimant, the contract prevents Plaintiffs from seeking public injunctive relief in any forum, a right which cannot be denied whether in arbitration or otherwise.** (emphasis added)

Like the plaintiffs in MacClelland, the plaintiffs in the case at bar are each proceeding under a state consumer protection statute which expressly authorizes each Plaintiff to act as a private attorney general and to obtain an injunction to protect the public by stopping the challenged unlawful practice. Yet, the arbitration clause in the Verizon Agreement expressly and flagrantly purports to strip Plaintiffs of these statutory rights. The federal court in MacClelland was correct that such a

provision is unconscionable and unenforceable.

**C.**  **Both the March 2022 and November 2022 Agreements Contain an Exculpatory Clause Which Improperly Bars Plaintiffs from Bringing or Proving Any Consumer Claim Which Does Not Arise from the Bare Language of the Verizon Agreement Itself.**

The March 16, 2022 Verizon Agreement applicable to the fifteen May 2022 Notice Plaintiffs states:  **"This agreement and the documents it incorporates form the entire agreement between us. You can't rely on any other documents, or on what's said by any Sales or Customer Service Representatives, and you have no other rights regarding Service or this agreement."** <u>See</u> DeNittis Decl. Ex. C at highlight No. 8. A substantially similar provision in the November 15, 2022 version of the Verizon Agreement applicable to the twelve December 2022 Notice Plaintiffs' claims states:  **"This agreement and the documents it incorporates from the entire agreement between us. Any other documents or anything said by any Sales or Customer Services Representatives will not form part of the agreement between us, and you have no other rights regarding Service or this agreement."** <u>See</u> Ex. D at highlight No. 6.

As outlined in greater detail in the complaint, the claims pleaded in this case arise primarily from facts <u>outside</u> the bare language of the Verizon Agreement itself. Specifically, Plaintiffs allege that, prior to signing up for Verizon services, Verizon made certain representations and material omissions in advertisements and otherwise regarding the total cost of wireless services. Then, after Plaintiffs had

already signed up for Verizon Wireless services, Verizon unilaterally began placing

an additional "Administrative Charge" on their bills which was not mentioned

anywhere in the Verizon Agreement or Verizon's advertisements, thereby

increasing the prices previously set forth in Verizon's pre-purchase advertising.

Plaintiffs allege this additional charge was never revealed to them in any fashion

until they first saw the charge on their bills.

Yet, according to the Verizon arbitration clauses quoted above, a consumer

cannot even bring—let alone prove—any arbitration claim against Verizon for any

misleading or deceptive statements made by Verizon in any documents,

advertisements or bills, or otherwise, which are outside of the bare text of the

Verizon Agreement itself. This restriction is an exculpatory clause which is nothing

short of an unconscionable attempt by Verizon to "prune" away Plaintiffs' statutory

rights under the various state consumer protection statutes under which they sue.

Both the New Jersey Appellate Division in <u>Achey</u> and the federal court in

<u>MacClelland</u> correctly held that this exculpatory provision of the Verizon

arbitration clause was unconscionable. <u>See</u> Exhibit A, <u>Achey</u>, ___ N.J.Super. ___,

2023 N.J. Super. LEXIS 45, at *14-15:

> **we find that the "exculpatory clause," barring any consumer**
> **claims which arise from statements not memorialized in the**
> **contract itself and barring customers from using any**
> **evidence in arbitration other than the contract itself, violates**
> **statutory rights granted by the CFA…Here, the discovery**
> **limitation forms an "unconscionable wall of protection" for**

33

> **defendants from accountability for valid consumer fraud claims and cannot stand.**

See also MacClelland, 609 F. Supp. 3d 1024, 1039:

> **The exculpatory claims here thus may function to negate substantive legal rights and remedies of Verizon consumers …The Court concludes that because the provision does not allow for extrinsic evidence to be considered under any circumstances, including to show fraud, this provision is substantively unconscionable.**

**D.    The March 2022 Agreement Contains a Provision Which Unlawfully Bars Consumer Fraud Claims if Notice Is Not Given Within 180 Days of Receipt of the Verizon Bill.**

As correctly noted by the New Jersey Appellate Division in Achey, Verizon's **"customer agreement further required plaintiffs to notify defendants of claims within 180 days of receiving the bill; otherwise, the customer would waive the right to bring a claim."** See Exhibit A, Achey, ___ N.J.Super. ___, 2023 N.J. Super. LEXIS 45, at *3. See also Exhibit C at highlight No. 2. This provision, which is likewise contained in the March 2022 Verizon Agreement applicable to the fifteen May 2022 Notice Plaintiffs (see Exhibit C at highlight No. 2) improperly seeks to take away statutory rights which were granted to Plaintiffs by the relevant consumer protection statutes in their respective states, all of which give consumers far longer than a mere 180 days to file their consumer fraud claims. Such an attempt to strip away statutory consumer rights is unconscionable. See, e.g., Gilmer v. Interstate/Johnson Lane Corp., 500 U.S. 20, 26 (1991).

34

In <u>Achey</u>, the Appellate Division held that the provision of the Verizon

Agreement which seeks to extinguish consumer fraud claims if notice is not given

within 180 days of receipt of the Verizon bill was unconscionable. <u>See</u> Exhibit A,

<u>Achey</u>, ___ N.J.Super. ___, 2023 N.J. Super. LEXIS 45, at *15-18, holding:

> **we find that the provision requiring customers to give
> defendants notice of a claim within 180 days of receiving a
> bill violates public policy… we find that the provision at issue
> violates public policy by effectively abrogating plaintiffs'
> CFA claims should they fail to notify defendants within 180
> days of the charge on their bill. As such, we agree with the
> <u>MacClelland</u> court that <u>there is at least some degree of
> substantive unconscionability in the 180-day notification
> clause because of the CFA's significant emphasis on routing
> out consumer fraud</u>. (emphasis added)**

The federal court in <u>MacClelland</u> reached the same correct conclusion. <u>See</u>

<u>MacClelland</u>, 609 F. Supp. 3d at 1035:

> **[A] customer who fails to notify Verizon within the 180-day
> notice window . . . will forfeit her right to bring suit. <u>A short
> notice period (significantly shorter than the limitations
> period) sets a trap for the unwary… The Court concludes
> that there is at least some degree of substantive
> unconscionability associated with the 180-day notice
> provision</u>. (emphasis added)**

Like the plaintiffs in <u>Achey</u> and <u>MacClelland</u>, the May 2022 Notice

Plaintiffs are each suing under state consumer statutes which give consumers far

longer than 180 days after receipt of their bill to bring a claim. As such, for the

reasons set forth in <u>Achey</u> and <u>MacClelland</u>, this 180-day limitation on claims

should be found unconscionable in the case at bar.

35

## VI. THE UNCONSCIONABLE PROVISIONS IN THE VERIZON AGREEMENT SO PERMEATE THE ARBITRATION SCHEME THAT THE ENTIRE ARBITRATION CLAUSE SHOULD BE STRICKEN.

As discussed and documented above in Section IV, Verizon has **<u>admitted</u>** in a related case before this Court that the mass arbitration provision (which is also present in both the March 16, 2022 and November 15, 2022 Agreements) is a central and essential part of the arbitration agreement and, thus, <u>cannot be severed from the Agreement</u>—such that Verizon's motion to compel arbitration rises or falls based on the enforceability of the mass arbitration provision. <u>See Corsi</u>, Case No. 3:22-cv-04621-ZNQ-RLS, Docket No. 31 (February 17, 2023, D.N.J.).

In addition, as discussed above, both Verizon Agreements also contain multiple other interlocking unconscionable provisions. Courts have found that the cumulative effect of such provisions (setting aside the fact that Verizon has already admitted that the mass arbitration provision is not severable) so permeate the arbitration clause as to require the court to strike the entire arbitration agreement. In <u>Alexander v. Anthony Int'l, L.P.</u>, 341 F.3d 256, 271 (3d Cir. 2003), for example, the Third Circuit held that where multiple unconscionable terms "permeate" the arbitration agreement so thoroughly that they taint its central purpose of promoting a fair alternative means of resolving of disputes, mere severance of the offending terms was not an option, holding:

> **These draconian terms unreasonably favor Anthony Crane to the severe disadvantage of plaintiffs and other St. Croix employees. The cumulative effect of so much illegality prevents us from enforcing the arbitration agreement. Because the sickness has infected the trunk, we must cut down the entire tree.**

In <u>Achey</u>, the New Jersey Appellate Division held that both the number and severity of the unconscionable provisions in the Verizon Agreement could not be cured merely by severing the offending portions, and therefore held that the only proper remedy was to strike the entire arbitration clause as unenforceable. <u>See</u> Exhibit A, <u>Achey</u>, ___ N.J.Super. ___, 2023 N.J. Super. LEXIS 45, at *18: **("Ultimately, we find that the 'cumulative effect' of the various unconscionable terms renders the arbitration agreement 'unenforceable for lack of mutual assent.'")**.

The federal court in <u>MacClelland</u> reached the same correct conclusion, holding **"Severance Is Not Appropriate Because the Agreement Is Permeated by Unconscionability."** <u>MacClelland</u>, 609 F. Supp. 3d at 1045. As explained by <u>MacClelland</u> court: **"Here, there is strong evidence that Verizon was trying to impose an 'inferior forum' on its customers... The Court reaches this conclusion based on the number of unconscionable provisions, their nature, and the overall effect which is entirely foreseeable and intended."** <u>Id</u>. at 1045-1046. Indeed, the federal court in <u>MacClelland</u> held that merely severing the various individual unconscionable provisions would "reward" Verizon for its

decision to intentionally write an arbitration clause that was clearly geared towards depriving consumers of a fair, timely and neutral means of prosecuting their claims. See MacClelland, 609 F.Supp 3d at 1046:

> **If the Court were to sever the numerous unconscionable provisions in a case such as this, companies could be incentivized to retain unenforceable provisions designed to chill customers' vindication of their rights, then simply propose to sever these provisions in the rare event that they are challenged successfully in court. The remedy of severance, therefore, may indirectly reward systemic unconscionability.**

Plaintiffs submit that the conclusion of the New Jersey Appellate Division in Achey and the federal court in MacClelland on this point was correct. The severity and multiple portions of Verizon's arbitration scheme which are unconscionable mean that mere severance of these offending provisions is not a viable option (meanwhile, Verizon has admitted that the mass arbitration provision is not severable). The Court should not try to "save" Verizon from its own decision to pervert the goals of the FAA and "weaponize" its arbitration clause by creating a scheme which makes consumers wait more than a century to even file those claims in arbitration. Rather, the unconscionable provisions in the Verizon arbitration clause are so severe and so numerous that they permeate the entire arbitration scheme and render it unenforceable as a whole.

## Conclusion

For the foregoing reasons, Verizon's motion to compel arbitration should be denied in its entirety.

Dated:  May 26, 2023          By:_____

DeNITTIS OSEFCHEN PRINCE, P.C.
Stephen P. DeNittis, Esq.
Joseph A. Osefchen, Esq.
Shane T. Prince, Esq.
525 Route 73 North, Suite 410
Marlton, NJ 08053
Telephone: (856) 797-9951
Facsimile: (856) 797-9978
Email: sdenittis@denittislaw.com
Email: josefchen@denittislaw.com
Email: sprince@denittislaw.com

HATTIS & LUKACS
Daniel M. Hattis, Esq.*
Paul Karl Lukacs, Esq.*
11711 SE 8th Street, Suite 120
Bellevue, WA 98005
Telephone: (425) 233-8650
Facsimile: (425) 412-7171
Email: dan@hattislaw.com
Email: pkl@hattislaw.com
* Pro Hac Vice Application To Be
Submitted

*Attorneys for Plaintiffs and the Proposed Classes*